## Commonwealth *vs.* Oscar Lyles.

Suffolk. March 4, 2009. - May 15, 2009.

Present: Marshall, C.J., Ireland, Spina, Cowin, Cordy, Botsford, & Gants, JJ.

*Threshold Police Inquiry. Constitutional Law,* Search and seizure. *Search and Seizure,* Threshold police inquiry.

A judge in the Boston Municipal Court properly allowed the defendant's motion to suppress evidence found on his person by Boston Housing Authority police officers at a police station after his arrest on an outstanding warrant, as well as any statements he may have made to them, where, during the initial encounter between the officers and the defendant on a public sidewalk, one officer's retention of the defendant's identification to check for outstanding warrants, without any reasonable suspicion of criminal activity, constituted an unlawful seizure. [814-817]

COMPLAINT received and sworn to in the Roxbury Division of the Boston Municipal Court Department on April 19, 2005.

A pretrial motion to suppress evidence was heard by *Michael J. Coyne*, J.

An application for leave to prosecute an interlocutory appeal was allowed by *Cowin*, J., in the Supreme Judicial Court for the county of Suffolk, and the case was transferred by her to the Appeals Court. After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Macy Lee*, Assistant District Attorney, for the Commonwealth.

*Chrystal A. Murray* (*Mary F. Norton* with her) for the defendant.

*David M. Siegel*, for Suffolk Lawyers for Justice, Inc., amicus curiae, submitted a brief.

Spina, J. On April 19, 2005, a complaint issued from the Roxbury Division of the Boston Municipal Court Department charging the defendant with possession of a Class A controlled substance (heroin) with intent to distribute, in violation of G. L. c. 94C, § 32. He filed a motion to suppress all evidence found

on his person by Boston Housing Authority police officers, as
well as any statements he may have made to them, on the ground
that he was unlawfully seized without a warrant in violation of
his State and Federal constitutional rights.[1] After an evidentiary
hearing, a judge in the Boston Municipal Court granted the
defendant's motion to suppress. A single justice of this court al-
lowed the Commonwealth to pursue an interlocutory appeal to
the Appeals Court pursuant to Mass. R. Crim. P. 15 (a) (2), as
appearing in 422 Mass. 1501 (1996). In an unpublished memo-
randum and order pursuant to its rule 1:28, the Appeals Court
affirmed the suppression order.[2] See *Commonwealth* v. *Lyles*,
71 Mass. App. Ct. 1127 (2008). We granted the Commonwealth's
application for further appellate review. For the reasons that fol-
low, we now affirm the order of the Boston Municipal Court
judge allowing the defendant's motion to suppress.[3]

We summarize the facts as found by the motion judge, supple-
mented by uncontested testimony from the suppression hearing.
See *Commonwealth* v. *DePeiza*, 449 Mass. 367, 368 (2007).

At approximately 1:30 P.M. on April 15, 2005, Boston Hous-
ing Authority police Officers O'Connor and Saunders, who
were on patrol and wearing plain clothes, observed the defend-
ant in the area around a community housing development, with
respect to which the police had received complaints about drug

[1]The defendant asserted in his suppression motion that the officers' conduct
violated his rights under both the Fourth Amendment to the United States
Constitution and art. 14 of the Massachusetts Declaration of Rights. We have
held that art. 14 provides more substantive protection than does the Fourth
Amendment in defining the moment when an individual's personal liberty has
been significantly restrained by police such that the individual may be said to
have been "seized" within the meaning of art. 14. See *Commonwealth* v.
*Stoute*, 422 Mass. 782, 786-789 (1996). Accordingly, here, we consider the
challenged seizure in light of the more stringent standards of art. 14 with the
understanding that, if these standards are satisfied, then so too are those of the
Fourth Amendment. See *Commonwealth* v. *Williams*, 422 Mass. 111, 115 n.9
(1996).

[2]After initially hearing oral argument in the Commonwealth's appeal, the
Appeals Court remanded the case to the District Court for written findings
regarding the credibility of the police officer who testified at the suppression
hearing, and regarding the evidence necessary to determine whether a stop in
the constitutional sense occurred. Once it received the judge's findings, the
Appeals Court ruled on the merits of the Commonwealth's appeal.

[3]We acknowledge the amicus brief filed in support of the defendant by Suf-
folk Lawyers for Justice, Inc.

activity.[4] The defendant was alone, and he was not known to either officer. Based only on their observation of the defendant as he walked along a public sidewalk, the officers, who were armed, got out of their unmarked vehicle, approached the defendant, displayed their badges, identified themselves, inquired as to the defendant's name, and asked him for identification. The defendant provided some form of identification to the officers.[5] While they were still standing on the sidewalk, Officer O'Connor proceeded to radio for a check of outstanding warrants, and when he discovered that there was one, he placed the defendant under arrest. During the subsequent booking procedure, the officers found nineteen plastic bags of heroin and $263 in cash on the defendant's person.

In allowing the defendant's motion to suppress, the judge stated that the encounter between the officers and the defendant went beyond a permissible field interrogation observation (FIO).[6] In the judge's view, the encounter was a stop pursuant to *Terry* v. *Ohio*, 392 U.S. 1 (1968). The judge further stated that the defendant did not voluntarily provide his identification to the officers, but did so only after the officers confronted him on the street and asked him for it. The judge concluded that the officers restrained the defendant such that he was not free to leave, and that the seizure of the defendant was not based on specific and articulable facts that would give rise to reasonable suspicion

---

[4]Boston Housing Authority police officers are specially detailed officers of the Boston police department and are under its authority. General Laws c. 121B, § 7, provides that "in the city of Boston, the housing authority may contract with said city for the assignment of thirty-seven police officers of the police department of said city to police the buildings and grounds owned by said authority with the proviso that said authority shall reimburse said city for one third of the cost thereof." Neither party has challenged the authority of Officers O'Connor and Saunders to stop the defendant on a public sidewalk.

[5]At the suppression hearing, Officer O'Connor did not specify what form of identification the defendant produced. On cross-examination, defense counsel confirmed that the defendant "complied with your order, he gave you his I.D.," to which Officer O'Connor replied, "Yes, his I.D." The booking form indicates that the defendant possessed a Massachusetts driver's license.

[6]A "field interrogation observation" has been described as an interaction in which a police officer identifies an individual and finds out that person's business for being in a particular area. See *Commonwealth* v. *Murphy*, 63 Mass. App. Ct. 11, 13 n.4 (2005).

of a crime. Rather, the judge continued, the officers acted on a hunch, which did not meet the standard for reasonable suspicion.

When reviewing the disposition of a motion to suppress, "we accept the motion judge's subsidiary findings of fact absent clear error." *Commonwealth* v. *Sanna*, 424 Mass. 92, 97 (1997). We make an independent determination whether the judge correctly applied constitutional principles to the facts as found. See *Commonwealth* v. *Robbins*, 407 Mass. 147, 151 (1990). The motion judge's determinations regarding the weight and credibility of the testimony presented at the suppression hearing are entitled to deference. See *Commonwealth* v. *Yesilciman*, 406 Mass. 736, 743 (1990), and cases cited. The Commonwealth bears the burden of demonstrating that the actions of law enforcement officials were within constitutional limits. See *Commonwealth* v. *DePeiza, supra* at 369.

The Commonwealth contends that the judge erred in allowing the defendant's motion to suppress. In the Commonwealth's view, the encounter between the officers and the defendant, on a public sidewalk, was a permissible FIO during which the defendant voluntarily responded to the officers' inquiry as to his name. The Commonwealth argues that because there was no evidence that the officers issued any orders to the defendant, or physically prevented him from leaving the scene, there was no seizure. The circumstances of the encounter, the Commonwealth continues, were not sufficiently intimidating that a reasonable person would have concluded that he was not free to leave. Accordingly, the Commonwealth asserts that the evidence found on the defendant's person at the police station following his arrest on an outstanding warrant should not be suppressed. We disagree.

We begin our analysis with a pertinent observation made by the United States Supreme Court in *Terry* v. *Ohio, supra* at 13: "Street encounters between citizens and police officers are incredibly rich in diversity. They range from wholly friendly exchanges of pleasantries or mutually useful information to hostile confrontations of armed men involving arrests, or injuries, or loss of life." The particular character of such an encounter will determine whether it is an intrusion of constitutional dimensions by law enforcement officials such that justification is required. See *Commonwealth* v. *Stoute*, 422 Mass. 782, 789 (1996).

We have stated that a person has been "seized" by a police officer "if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Commonwealth* v. *Borges*, 395 Mass. 788, 791 (1985), quoting *United States* v. *Mendenhall*, 446 U.S. 544, 554 (1980) (officer's request that defendant remove shoes constituted seizure within meaning of art. 14 of Massachusetts Declaration of Rights). "[T]he police do not effect a seizure merely by asking questions unless the circumstances of the encounter are sufficiently intimidating that a reasonable person would believe he was not free to turn his back on his interrogator and walk away." *Commonwealth* v. *Fraser*, 410 Mass. 541, 544 (1991) (officer did not seize defendant when he approached defendant, identified himself as police officer, and asked defendant to remove hands from pockets). See *Commonwealth* v. *Lopez*, 451 Mass. 608, 610-612 (2008) (no seizure where officers merely asked to speak with citizen in absence of intimidating circumstances); *Commonwealth* v. *Thomas*, 429 Mass. 403, 405-407 (1999) (no seizure where officer only asked questions during FIO without show of authority); *Commonwealth* v. *Thinh Van Cao*, 419 Mass. 383, 387-388, cert. denied, 515 U.S. 1146 (1995) (no seizure in circumstances of FIO where officer approached defendant in public, asked several questions concerning his identity, wrote information on notecard, and did not indicate that defendant was not free to terminate encounter).

Contrary to the Commonwealth's contention, the actions of Officers O'Connor and Saunders went beyond merely approaching the defendant and asking his name. Although dressed in plain clothes, the officers were armed, they displayed their badges to the defendant, and they identified themselves as police officers. Officer O'Connor requested the defendant's identification and took it from him, not just to view the information and verify that the defendant was who he purported to be, but to run a check for outstanding warrants, notably without the defendant's consent. By retaining the defendant's identification to perform this task, Officer O'Connor was implicitly commanding the defendant to remain on the scene. At this juncture, a reasonable person would not believe that he could terminate the encounter and leave, given the importance of having identification, such as a driver's license,

to daily transactions in today's society.[7] A reasonable person simply would not relinquish his identification to the police and continue on with his business. Moreover, it is unlikely that a reasonable person, who will not be versed in the intricacies of the law of search and seizure, would feel free to ask for the immediate return of his identification from a police officer, regardless of whether the officer is standing next to him or is several feet away in a patrol car. Based on the totality of the circumstances, we conclude that the actions of Officer O'Connor in retaining the defendant's identification constituted a seizure.[8]

In a case that is factually analogous to the present one, the Supreme Court of Tennessee in *State* v. *Daniel*, 12 S.W.3d 420, 427-428 (Tenn. 2000), concluded that a defendant was seized within the meaning of the Fourth Amendment to the United States Constitution and art. I, § 7, of the Tennessee Constitution when, after requesting and examining the defendant's identification, a

---

[7]As one commentator has pointed out, a driver's license is "the most commonly requested form of verification in industries ranging from banks, to nightclubs and liquor stores, to trains, planes, and rental cars. In fact, it would be difficult to cash checks, enter secured areas, or even purchase alcohol without a driver's license. In this way, it has become the form of identification upon which Americans most often depend." Comment, Are You Ready for a National ID Card? Perhaps We Don't Have to Choose Between Fear of Terrorism and Need for Privacy, 17 Emory Int'l L. Rev. 287, 321 (2003).

[8]Our opinion in *Commonwealth* v. *DePeiza*, 449 Mass. 367 (2007), is not to the contrary. There, the defendant was walking alone shortly past midnight in a "high crime" neighborhood when two police officers approached him in their vehicle and called out to him. *Id.* at 368. At some point during their conversation with the defendant, the officers stepped out of their car. *Id.* at 369. Without being asked, the defendant gave them his student identification and driver's license. *Id.* We concluded that the defendant was not seized when he voluntarily offered his identification to the officers. *Id.* at 370. "That the officers accepted the identification when offered, and held it during the brief conversation that followed, [did] not 'amount to a show of official authority such that "a reasonable person would have believed that he was not free to leave." ' " *Id.*, quoting *Florida* v. *Royer*, 460 U.S. 491, 502 (1983) (plurality opinion). In the *DePeiza* case, because the defendant voluntarily offered his identification to the police without being asked for it, his actions were not an acquiescence to authority. Further, there was no evidence that the officers retained the defendant's identification to run a check for outstanding warrants. Contrast *Commonwealth* v. *Murphy*, 63 Mass. App. Ct. 11, 19 (2005) (stating that police officer's demand that defendant produce identification, made as officer conducted patfrisk, "was not a request for voluntary cooperation, but a show of authority with which a reasonable person would feel compelled to comply").

police officer retained the identification to run a computer check for outstanding warrants. The court stated that the officer's conduct in merely approaching the defendant, inquiring what was going on, and asking to see his identification did not constitute a seizure because it appeared that this encounter was not accompanied by physical force or a show of authority. *Id.* at 427. It was the officer's retention of the defendant's identification to run a computer check for outstanding warrants that, in the court's view, transformed a consensual police-citizen encounter into a seizure of the defendant. *Id.* The Supreme Court of Tennessee cogently recognized, as do we here, that an individual is effectively "immobilized" without his identification, and that abandoning one's identification is not a practical or realistic option. *Id.* As such, the court opined, no reasonable person would believe that he could simply terminate the encounter by asking the officer to return the identification. *Id.* See *United States* v. *Jordan*, 958 F.2d 1085, 1087-1088 (D.C. Cir. 1992) (holding that, for purposes of Fourth Amendment, retention of defendant's driver's license during police questioning constituted seizure); *People* v. *Mitchell*, 355 Ill. App. 3d 1030, 1034-1035 (2005) (concluding that officer's retention of defendant's identification to run computer warrant check following consensual police-citizen encounter constituted seizure within meaning of Fourth Amendment); *Salt Lake City* v. *Ray*, 998 P.2d 274, 278 (Utah Ct. App. 2000) (same). See also 4 W.R. LaFave, Search and Seizure § 9.4(a), at 428 & n.81 (4th ed. 2004) (collecting cases where encounter becomes seizure when law enforcement official holds individual's identification papers or other property).

Here, what began as a consensual police-citizen encounter matured into a seizure of the defendant, with respect to which the officers lacked reasonable suspicion of criminal activity. Given that Officer O'Connor's knowledge of the outstanding warrant was the fruit of the defendant's unlawful seizure, the evidence recovered from the defendant during the booking procedure must be suppressed, as required by art. 14. See note 1, *supra.* See also *Commonwealth* v. *Borges*, 395 Mass. 788, 795 (1985). Accordingly, we affirm the order allowing the defendant's motion to suppress.

*So ordered.*