COMMONWEALTH *vs.* RONALD MATHIS.

No. 08-P-789.

Suffolk. October 2, 2009. - March 2, 2010.

Present: BERRY, GRAINGER, & WOLOHOJIAN, JJ.

*Constitutional Law,* Search and seizure, Investigatory stop, Reasonable suspicion, Probable cause. *Search and Seizure,* Threshold police inquiry, Reasonable suspicion, Protective frisk, Probable cause. *Threshold Police Inquiry. Controlled Substances. Practice, Criminal,* Failure to make objection.

A Boston Municipal Court judge properly denied a criminal defendant's pretrial motion to suppress drugs discovered during a patfrisk that was conducted by police officers when, after the defendant had responded to an initial request for identification by the officers, who observed him in front of a building with a "no trespassing" sign, the defendant acted evasively, stated in response to an officer's question that he had marijuana on his person, and attempted to put his hand in his pocket, where the defendant was seized only at the point when he was pat frisked, and the defendant's evasive behavior justified the patfrisk, and where the defendant's statement that he was in possession of illegal drugs provided, in any event, probable cause for his arrest and a search incident to that arrest. [368-374] WOLO-HOJIAN, J., dissenting.

This court did not consider a criminal defendant's claim that police officers subjected him to custodial interrogation absent Miranda warnings, where he waived the issue by failing to raise it in his pretrial motion to suppress. [374-375]

COMPLAINT received and sworn to in the Dorchester Division of the Boston Municipal Court Department on February 6, 2006.

A pretrial motion to suppress evidence was heard by *Roberto Ronquillo, Jr.,* J., and the case was tried before *Rosalind Henson Miller,* J.

*Jill S. Klowden* for the defendant.

*Anna E. Kalluri,* Assistant District Attorney, for the Commonwealth.

GRAINGER, J. After a jury trial in the Dorchester Division of the Boston Municipal Court Department, the defendant was found guilty of possession of cocaine with intent to distribute,

G. L. c. 94C, § 32A; and committing the offense within a school zone, G. L. c. 94C, § 32J. The defendant asserts error in the denial of his motion to suppress evidence central to his convictions. Specifically, the defendant contends that the arresting officers (i) conducted an unlawful seizure in violation of his rights under art. 14 of the Massachusetts Declaration of Rights, and (ii) subjected him to custodial interrogation in violation of his Miranda rights.

*Background.* The facts are uncontested except in two incidental respects; in both of these the judge credited the defendant's recollection. At approximately 10:30 P.M. on February 5, 2006, Boston police Officers Duran Edwards and Richard Sleamon[1] were patrolling in an unmarked cruiser when they observed the defendant standing in front of a building bearing a "no trespassing" sign. The officers approached, identified themselves, and, while seated in their vehicle, asked the defendant the purpose for his presence; he replied that his mother lived in the building. The officers requested documentary identification[2] and ran a warrant check on the defendant, which produced no results. If the officers received documentation, they returned it to the defendant at that point. During this exchange, the officers observed that the defendant was breathing heavily, stuttering, and "couldn't get his words out right." Officer Edwards then proceeded to ask the defendant if he had "anything on [him] I need to know about?"[3] to which the defendant responded, "Yeah, I got a bag of weed on me." It is undisputed that the defendant's identification had been returned to him before this exchange took place. After the return of the identification, and then, after the defendant's admission that he was committing a crime at that moment,[4] the defendant

---

[1]Although the parties spell Officer Sleamon's name as detailed in the text, it appears as "Slamin" in the criminal complaint.

[2]The defendant testified that he provided identification. The officers did not remember whether they asked for documentation or merely asked the defendant for his name and address. It is uncontested that the information, however provided, was used to determine whether the defendant had any outstanding warrants.

[3]The officer so testified at one point. The judge found that the officer "asked the question whether [the defendant] had any guns or drugs on him." The judge's use of "guns and drugs" rather than "anything" is not supported by the evidence; the difference in wording does not affect our analysis.

[4]At the time of the offense, it was still a crime in Massachusetts to possess

proceeded to place his hand in his pocket. The defendant was ordered by the officers to keep his hands in sight while they then asked him if he previously had been arrested, and also proceeded to question him in a general fashion.[5]

At this point, the officers emerged from their cruiser.[6] The defendant, who now was avoiding eye contact, "looking down at the ground," made several attempts to put his hands into his pockets. After instructing the defendant to remove his hands, Officer Edwards conducted a patfrisk of the defendant's waist area. During the course of the frisk, several plastic vials containing "crack" cocaine fell from the defendant's pockets.

*Seizure of the defendant.* The motion judge correctly ruled

---

even a small amount of marijuana. See G. L. c. 94C, § 34, as in effect prior to St. 2008, c. 387, § 5, which amended the statute to criminalize possession of more than one ounce of marijuana.

[5]We reproduce the relevant testimony:

> WITNESS:      "I believe at that time I proceeded to exit the cruiser. And I asked him. I was like, you know, 'You have anything on you I need to know about?' And, um, he stated to me, you know, 'Yeah, I got a bag [of] my weed in my pocket.' And he proceeded to go inside his pocket to try to pull the weed out. And I told him, you know, keep your hands where I could see them."

> PROSECUTOR:   "At — at this point, Officer, where is your partner?"

> WITNESS:      "Um, I believe he's still, uh, sitting inside the cruiser, I believe, or he's getting out at the time I get out."

> PROSECUTOR:   "Uh, and you stated that you instructed him to take his hands out of his pocket?"

> WITNESS:      "That's correct."

> PROSECUTOR:   "What happened next?"

> WITNESS:      "At that time I proceeded to, um, I continued to engage him, you know. Um, you know, 'You ever been arrested before?' that sort of thing. Just general conversations. And, um, at that time, you know, I still made additional observations. Like I said, he was looking away from us, failing to make eye contact, looking down at the ground. And at the time, I believe I — he attempted to put his hands back in his pocket again."

[6]The defendant testified that the officers left their vehicle only after questioning him. The motion judge's findings on this point, though imprecise, adopted the defendant's version.

that the officers did not seize the defendant when they first approached him and asked his identity in a "reasonable tone." An officer's conversational approach to an individual, absent a show of authority, does not rise to the level of a seizure under art. 14 of the Massachusetts Declaration of Rights. See, e.g., *Commonwealth v. Thomas*, 429 Mass. 403, 406 (1999); *Commonwealth v. De-Peiza*, 449 Mass. 367, 370 (2007). The officers did not restrict the defendant's freedom of movement, nor did they question the defendant in a hostile manner. Contrary to the defendant's contention, the officers' location — whether inside the cruiser or on the sidewalk — does not alter our conclusion. See *DePeiza, supra* at 369-370 (no seizure where officers left their vehicle and positioned themselves on either side of the defendant during questioning); *Commonwealth v. Pagan*, 63 Mass. App. Ct. 780, 782 (2005) (no seizure "by simply alighting from the police cruiser and approaching" defendant). Contrast *Commonwealth v. Grandison*, 433 Mass. 135, 138-139 (2001) (encounter became stop when officer not only emerged from cruiser but also commanded defendant to stop).

Even if the officers' request for identification is characterized as more than a casual street encounter and therefore required justification, such justification was present here. As noted, *supra,* the officers' request for identification served to test the defendant's explanation for his presence in front of a "no trespassing" sign.[7] Assuming the defendant provided documentation in addition to his oral statements, the officers' continued retention of the identification after its use for a lawful purpose "implicitly command[ed] the defendant to remain on the scene." *Commonwealth v. Lyles*, 453 Mass. 811, 815 (2009).[8] Thus, while we agree with the motion judge that the defendant was seized at a later point in time when Officer Edwards conducted a patfrisk of his person, *Lyles* instructs that he also may have been seized during the

[7]In this context we must disagree with the suggestion in the dissent that the police were not justified in making serious inquiry of the defendant because the initial encounter involved "only" a "no trespassing" sign, representing as that does in many instances a final line of defense for elderly or vulnerable residents of deteriorating neighborhoods to criminal activity on their doorsteps.

[8]We note that the judge did not have the benefit of *Lyles*, which was decided after the trial in this case.

earlier time period while his documentation was retained by the police.

As stated, *supra*, and assuming the defendant provided the officers with identification in written form, it was returned to him after the warrant check was completed. Our cases dealing with investigatory stops recognize that there is some ambiguity inherent in many encounters between citizens and police officers. See *Commonwealth* v. *Sykes*, 449 Mass. 308, 311 (2007) ("The nature of an encounter between a citizen and a law enforcement official is necessarily fact specific and requires careful examination of the attending circumstances"); *Commonwealth* v. *Fletcher*, 52 Mass. App. Ct. 166, 172 (2001) ("[s]treet encounters between citizens and police officers are incredibly rich in diversity . . . [which] yields the abundance of 'highly fact-based questions' " [citations omitted]).

However, where the retention of documents serves as an inferred command to remain on the scene during a warrant check, their return may be viewed as a positive act that removes the command. Simply put, any implicit command dependent on the retention of documents is no longer operative once the documents are returned. Consistent with this logical inference, the defendant testified at the motion hearing that he considered himself free to leave at the point that his identification was returned to him.[9] The defendant's concession is also consistent with that part of the analysis in *Lyles* that relies on the commonsense conclusion that an individual does not feel free to leave for the very reason that he does not feel free to demand the return of identification from a police officer who has acquired it. See *Commonwealth* v. *Lyles, supra* at 816. Thus, it is reasonable to conclude that any initial seizure had terminated when, thereafter in

---

[9] DEFENDANT:         "[T]hey just hopped out of the car and asked me . . . do I have any weapons or drugs. That's when they exited the car."

DEFENSE COUNSEL:  "Ok. And did you think you were free to leave at (inaudible) that point?"

DEFENDANT:        "Yeah. If I don't have no warrants."

The defendant also denied having been nervous, but conceded that he had been out of breath, testifying he had "[run] down the stairs."

possession of his identification, the defendant volunteered that he was carrying marijuana in response to the general inquiry whether he had anything the officers "need[ed] to know about."[10]

Moreover, even if we assume that the defendant had not been free to depart after the warrant check produced negative results, the police were justified in continuing their investigation under these circumstances, at least to the minimal extent they did so here. The defendant's odd and evasive behavior provided ample support for the single additional question that led to the admission that the defendant had illegal drugs on his person. Thus, even if the return of the identification is not characterized as a termination of the seizure that began when it was taken, there was reasonable suspicion to prompt the question asked by the police. See note 13, *infra.*

We next address the contention that Officer Edwards illegally seized the defendant because he exited his vehicle before, not after, the defendant admitted to possessing marijuana. The motion judge's finding to the contrary is supported by the evidence. In reviewing a motion to suppress, we adhere to the motion judge's findings of fact absent clear error. *Commonwealth* v. *Thomas,* 429 Mass. at 405. "We independently determine whether the judge correctly applied constitutional principles to the facts as found." *Commonwealth* v. *Isaiah I.,* 450 Mass. 818, 821 (2008). "The clear error standard is a very limited form of review. . . . Where there has been conflicting testimony as to a particular event or series of events, a judge's resolution of such conflicting testimony invariably will be accepted." *Commonwealth* v. *Yesilciman,* 406 Mass. 736, 743 (1990), quoting from *Commonwealth* v. *Spagnolo,* 17 Mass. App. Ct. 516, 517-518 (1984).[11]

Moreover the distinction is of no legal import in the circumstances of this case. A person is "seized" by a police officer "if, in view of all of the circumstances surrounding the

---

[10]As noted, *supra,* the facts are undisputed in all material respects; accordingly we do not comprehend the dissent's perception of appellate fact finding. In any event, a determination whether a reasonable person is free to leave is a legal conclusion applied to (here, undisputed) facts, and not a factual finding. Compare *Commonwealth* v. *Rock,* 429 Mass. 609, 611-612 (1999).

[11]We have noted as well that the finding that the officers were still in their vehicle is based on the defendant's own testimony, which the motion judge was entitled to credit. See note 5, *supra.*

incident, a reasonable person would have believed that he was not free to leave." *Commonwealth* v. *Rock*, 429 Mass. 609, 611 (1999), quoting from *Commonwealth* v. *Stoute*, 422 Mass. 782, 786 (1996). The fact that an officer leaves his cruiser during an encounter is but one factor in considering whether the requisite show of authority has occurred. See *DePeiza*, 449 Mass. at 370; *Pagan*, 63 Mass. App. Ct. at 782. The record contains no indicia of additional police conduct that could be interpreted as improper by any standard, much less coercion.[12] The officers asked a single question — "You got anything on you I need to know about?" — which was not excessive[13] or improper, especially in light of the defendant's abnormal behavior preceding the question. Although the dissent characterizes the police as "impermissibly" using the opportunity of the warrant check to question the defendant at greater length, the general questioning of the defendant in fact did not occur during the warrant check, but, rather, followed his admission that he was in possession of an illegal substance. See note 5, *supra*. We agree with the motion judge that if the officers left their cruiser before the defendant's admission, this act did not constitute new grounds to conclude that the defendant was seized at the time he uttered the incriminating statement.[14] See *Commonwealth* v. *Thinh Van Cao*, 419 Mass. 383, 385, 387-388, cert. denied, 515 U.S. 1146 (1995) (no seizure where, absent an order to comply or indication that defendant could not terminate the encounter, officer approached him on foot and asked questions concerning his identity).

[12]To the contrary, as discussed, *supra*, the defendant's own version of events was that his identification, which he knew by then that the police considered to be exculpatory, had been returned to him before they exited the cruiser, and that he considered himself free to leave.

[13]General questioning unrelated to the reason for a police encounter does not "convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop." *Arizona* v. *Johnson*, 129 S. Ct. 781, 788 (2009). One question, undeniably the fewest number one can ask, cannot rationally be argued to qualify as violative of this principle.

[14]The defendant's reliance on *Commonwealth* v. *King*, 389 Mass. 233 (1983), is unavailing. In *King*, the investigating officer's "repositioning of his cruiser" constituted a show of authority that transformed the encounter into a seizure. *Id.* at 241. Thereafter, further interaction with the defendants required an articulable justification on the part of the officer. *Id.* at 243-244.

After the defendant's admission, and after some general questioning and several commands by the officers to keep his hands in sight, the defendant was pat frisked. Having determined that a seizure occurred at the time of the patfrisk, we must evaluate whether the officers' conduct was reasonable under the circumstances. We do not disagree with the motion judge's conclusion that the officers harbored a reasonable suspicion that the defendant had committed a crime, and may have been armed.[15] An officer has the right to "make a threshold inquiry where suspicious conduct gives the officer reason to suspect that a person has committed, is committing, or is about to commit a crime." *Commonwealth* v. *Watson*, 430 Mass. 725, 729 (2000), quoting from *Commonwealth* v. *Silva*, 366 Mass. 402, 405 (1974). Furthermore, "[a] protective frisk of a defendant is justified where an officer reasonably believes the defendant is armed and dangerous." *Commonwealth* v. *Fisher*, 54 Mass. App. Ct. 41, 44 (2002). In assessing the reasonableness of an officers's belief, we look to the specific inferences drawn from the facts in light of the officer's experience. *Commonwealth* v. *Isaiah I.*, 450 Mass. at 823. Here, as noted, *supra*, in addition to breathing with difficulty, stuttering, and repeatedly attempting to put his hands in his pockets, the defendant was also avoiding eye contact. "Strange, furtive, or suspicious behavior or movements can infuse otherwise innocent activity with an incriminating aspect." *Pagan*, 63 Mass. App. Ct. at 782-783. The officers were not "required to accept the risk of [any] ambiguity" under these circumstances. *Commonwealth* v. *Johnson*, 454 Mass. 159, 164 (2009) (officers legitimately in presence of group because one individual was trespassing, had the right to conduct patfrisk where defendant disregarded specific instruction to take his hands out of his pockets).[16] Coupled with the fact that Officer Edwards had made several recent narcotics and firearms-related arrests in the area,

---

[15]Officer Edwards testified as well that the defendant's mannerisms — those he observed during his initial questioning about the defendant's presence in front of a "no trespassing" sign — "are consistent with someone who may be in possession of a weapon."

[16]This case does not involve a routine traffic stop and the questioning of an individual who was not the driver, and hence not suspected of any traffic violation, as was considered in *Commonwealth* v. *Torres*, 424 Mass. 153, 158-159 (1997). Furthermore, even assuming the defendant was still seized by the police despite the return of his identification and despite his own perception to

this demeanor provided reasonable suspicion for the limited pat-frisk of the defendant. *DePeiza*, 449 Mass. at 371-372.

Perhaps more to the point, however, and equally dispositive in this appeal, is the fact that the officers had probable cause to arrest this defendant after he told them he was in possession of illegal drugs. See *Commonwealth* v. *Johnson*, 413 Mass. 598, 602 (1992), quoting from *Commonwealth* v. *Santiago*, 410 Mass. 737, 742 (1991) (search incident to arrest may precede formal arrest "as long as probable cause [to arrest] existed independent of the results of the search").

*Miranda warnings.* We next address the defendant's claim that the officers subjected him to custodial interrogation absent Miranda warnings when they exited their vehicle to continue questioning. Before addressing the merits of the claim, we must determine whether the defendant waived the issue. Rule 13(a)(2) of the Massachusetts Rules of Criminal Procedure requires that a motion to suppress set forth the grounds "with particularity." Furthermore, the rule requires that an affidavit be attached "detailing all facts relied upon in support of the motion." A party's failure to raise a potential claim at his suppression hearing waives any appeal on that issue. See Mass.R.Crim.P. 13(a)(2), as appearing in 442 Mass. 1516 (2004) ("Grounds not stated which reasonably could have been known at the time a motion is filed shall be deemed to have been waived . . ."). The defendant's motion to suppress focused entirely on the alleged unlawful seizure, and claimed only that his statements should be suppressed as the fruits of that seizure. Moreover, the affidavit contained no facts whatsoever with respect to any such statements. Consequently, the defendant's claim is waived and not properly before us.[17] See *Commonwealth* v. *Pope*, 15 Mass. App. Ct. 505, 506-507 (1983) (Miranda issue waived where defendant's motion to suppress

---

the contrary, his behavior described, *supra*, satisfies the need for "reasonable suspicion grounded in specific articulable facts . . . to question him further." *Id.* at 158.

[17] Even were we to reach the issue, there is no colorable claim on this record that the defendant was being subjected to custodial interrogation at the time he made his inculpatory statement. See *DePeiza*, *supra* at 376 (officer's querying whether defendant was carrying a gun after announcing he wanted to conduct a patfrisk not deemed custodial interrogation where officers' tone was conversational and conduct not aggressive).

focused entirely on illegal search and no objection raised to statements at trial).

*Judgments affirmed.*

WOLOHOJIAN, J. (dissenting). The defendant was questioned by police only because he was standing in front of a house posted with a "no trespassing" sign. Although the officers had no reason to think that the defendant was in fact trespassing,[1] they were entitled to inquire as to why he was there. Neither his mannerism nor his response gave them any reason to think he was trespassing; indeed, the defendant willingly and openly offered a reasonable explanation for his presence (that his mother lived in the building), and one the officers had no reason to doubt. The officers were, as the motion judge found, satisfied that the defendant was not trespassing.

I dissent because the encounter should have ended then. Once the original purpose of the questioning was satisfied and no other appeared, the police were not entitled to conduct a fishing expedition simply to see what, if anything, they might turn up. See, e.g., *Commonwealth* v. *King,* 389 Mass. 233, 244 (1983) (police inquiry made in context of routine traffic stop must end on production of valid documents); *Commonwealth* v. *Torres,* 424 Mass. 153, 158 (1997) (same).[2]

The problem is exacerbated because the excessive questioning took place in conjunction with an unlawful seizure. See *Commonwealth* v. *Lyles,* 453 Mass. 811, 817 (2009). The defendant was not free to go once the police took his identification,

---

[1] The police had not received any reports of trespassing, or any other suspicious activity in the area that evening. The police did not know the defendant, and there is no suggestion that they had any reason to think he did not live at the address or was not otherwise legitimately present. The officer admitted that he stopped the defendant only because he was standing near a "no trespassing" sign.

[2] The *Torres* and *King* cases involve police questioning in the context of vehicular stops. There is no reason, however, not to apply their analyses to this case. Indeed, in the related context of searches, it long has been held that vehicles carry with them a diminished expectation of privacy. See, e.g., *South Dakota* v. *Opperman,* 428 U.S. 364, 368 (1976); *Wyoming* v. *Houghton,* 526 U.S. 295, 304 (1999). It would make no sense, therefore, to hold here (as the majority does) that the defendant is entitled to more protection from police questioning when in his car than on the street.

see *id.* at 815-816, and the police impermissibly used that opportunity not only to run a warrant check but also to question the defendant, both aimlessly and intrusively. The last question in this conversation ("You got anything on you I need to know about?") happened to occur after the police returned the defendant's identification. It is overly formalistic to conclude as a matter of law, as the majority does, that a reasonable person in the defendant's circumstances would have believed he was "free to turn his back on his interrogator and walk away," *Commonwealth* v. *Fraser*, 410 Mass. 541, 544 (1991), simply because his identification had been returned to him in the middle of an ongoing over-reaching police interrogation.

To the extent that the majority is resting its analysis and conclusion on whether, in the circumstances of this case, a reasonable person would have believed himself free to leave, it is engaged in impermissible fact finding. On appeal from an order on a motion to suppress, we may supplement the motion judge's findings of fact *only* "if the evidence is uncontroverted and undisputed and where the judge explicitly or implicitly credited the witness's testimony." *Commonwealth* v. *Isaiah I.*, 448 Mass. 334, 337 (2007). Here, the motion judge made no findings concerning several of the facts relied on by the majority, nor are those facts undisputed. For example, the officer testified that he exited his cruiser before asking the defendant whether he had anything on him; the defendant testified that the officers exited after they received his response. Similarly, the defendant testified that the officers asked him whether he had anything on him immediately after returning his identification, and then immediately left their cruiser when he replied that he had "weed." The officer, by contrast, testified to a continuing "general conversation" (which included asking the defendant whether he ever had been arrested), and further observations of what he characterized as suspicious behavior, before he exited his vehicle. By way of further example, the defendant denied any suspicious behavior or demeanor, including denying avoiding making eye contact, or being nervous.[3] Furthermore, fairly read, the transcript reflects that the defendant did not testify that he believed he

---

[3]Such behavior alone in any event would not justify the search. *Commonwealth* v. *Brown*, 75 Mass. App. Ct. 528, 533 (2009), quoting from *Com-*

was free to go; instead, his full testimony was that he thought he should have been free to leave once the police determined he had no outstanding warrants, but that the police further detained him. Thus, to the extent that the majority's analysis or conclusion rests on any of these factual findings, it strays beyond the proper bounds of appellate review.

For these reasons, I respectfully dissent.

*monwealth* v. *Williams*, 46 Mass. App. Ct. 181, 184 (1999) ("The trooper's testimony that the defendant and his fellow passenger had 'nervous looks' or appeared to be 'tense' are 'general descriptions [that] fall short of the 'specific and articulable facts' which are required to demonstrate reasonableness").