APPEALS COURT 
 
 COMMONWEALTH vs. ALEXANDER SOTO

 
 Docket:
 23-P-1111
 
 
 Dates:
 June 6, 2024 – October 10, 2024
 
 
 Present:
 Blake, Neyman, & Sacks, JJ.
 
 
 County:
 Hampden
 

 
 Keywords:
 Controlled Substances. Search and Seizure, Warrant, Probable cause, Search incident to lawful arrest. Probable Cause. Arrest. Practice, Criminal, Motion to suppress, Motion for reconsideration.
 
 

       Indictment found and returned in the
Superior Court Department on October 1, 2019.
A pretrial motion
to suppress evidence was heard by Michael K. Callan, J.; a motion to reconsider
was considered by him; and a conditional plea of guilty was accepted by James
M. Manitsas, J.
      Dana Goldblatt for the defendant.
      Carmel A. Motherway, Assistant District
Attorney, for the Commonwealth.
      BLAKE, J. 
Following his indictment on a charge of trafficking in heroin, the
defendant, Alexander Soto, filed a motion to suppress statements he made when
confronted by police and evidence found in a backpack.[1]  He claimed that the statements were the
fruits of a warrantless seizure and search that occurred in violation of art.
14 of the Massachusetts Declaration of Rights and the Fourth and Fourteenth
Amendments to the United States Constitution. 
After an evidentiary hearing, a judge of the Superior Court, in a
comprehensive and well-reasoned decision, allowed the motion to suppress
certain statements, but denied the motion to suppress evidence found in the
backpack.  The defendant filed a motion
for reconsideration, which the same judge denied.  Thereafter, pursuant to Mass. R.
Crim. P. 12 (b) (6), as appearing in 482 Mass. 1501 (2019), the
defendant pleaded guilty to a reduced charge of possession with intent to
distribute a class A substance, reserving the right to appeal the partial
denial of his motion to suppress.  We
affirm.
      Facts. 
We recite the facts as found by the judge, none of which the defendant
contests.  On July 19, 2019, at
7:15 P.M., Westfield Police Officer Brendan Irujo was on routine traffic
enforcement patrol in his police cruiser on Elm Street.  Around this same time, a tenant living at 97
Elm Street called 911 to report two men breaking and entering into his
apartment.[2]  The caller provided his
name and telephone number and advised the 911 operator that he was not at home,
but that he had active surveillance cameras and was watching the men "in
real time."  The caller described
the men by their build and clothing, reported that they were wearing masks, and
stated "they got gloves and everything."  The caller reported that one of the men was
"looking all over [his] cabinets." 
He informed the dispatch operator that his apartment was number 402, but
that the door was not marked with a unit number.  Initially he reported that the men were
unarmed.
      The caller was told to stay on the line
while Officer Irujo was contacted.  The
caller continued to report what he was seeing on his surveillance cameras in
real time to the dispatcher who then repeated it to Officer Irujo.  Shortly after dispatch contacted Officer
Irujo, the caller stated, "[T]hey got guns."  He repeated this statement several times in
an excited manner.  The caller described
one gun as black and noted that one intruder "had a book bag."
      By happenstance, Officer Irujo was
immediately in front of 97 Elm Street, and "within moments of the
call," parked his cruiser, grabbed his rifle, and entered the front door
of the apartment building.  He was
familiar with the building having responded to it many times over his ten-year
career.  Officer Irujo knew that
apartment 402 was on the fourth floor; he took the stairs and reached the
apartment within minutes of the dispatch call. 
Although he was alone, Officer Irujo knew other police officers were due
to arrive shortly.  He took up a position
in the hallway that provided a clear line of sight and tactical cover as he
monitored the door to apartment 402. 
Less than a minute after his arrival on the fourth floor, the door to
apartment 402 opened and a man, later identified as the defendant, stepped into
the doorway.  Officer Irujo immediately
ordered the defendant to the ground.  The
defendant complied; he was not armed, did not have gloves or a mask, and was
not carrying a backpack.  As Officer
Irujo approached the defendant, he looked inside the apartment and saw a second
man standing immediately inside the doorway, all within seconds after the
apartment door opened.  The second
individual, who also did not have a mask or a weapon visible, was ordered to
the ground, and he complied.
      As Officer Irujo was covering the two
individuals with his rifle, backup officers arrived within a minute and
handcuffed the men.  One officer asked
what the defendant was "doing here," and he replied that
"everything is in the backpack."[3] 
Officer Irujo at once noticed a backpack "immediately at or within
the threshold of apartment 402." 
The backpack, which was within the defendant's "immediate reach as
he exited the apartment[,]" was seized and searched, and heroin was
discovered.[4]  The judge found that in
seizing the backpack, Officer Irujo was "primarily concerned with locating
the unaccounted-for handguns observed and reported by [the caller]."
      Discussion.  The primary issue on appeal is whether the
judge properly denied the motion to suppress evidence.  Our standard of review is well settled.  "[W]e accept the judge's subsidiary
findings of fact absent clear error 'but conduct an independent review of his
ultimate findings and conclusions of law.'"  Commonwealth v. Clarke, 461 Mass. 336, 340
(2012), quoting Commonwealth v. Scott, 440 Mass. 642, 646 (2004).  We also accept the credibility determinations
made by the judge.  See Commonwealth v.
Eckert, 431 Mass. 591, 592-593 (2000).
      1. 
The arrest.  The judge ruled that
Officer Irujo had probable cause to arrest the defendant, and that the search
of the backpack was a lawful search incident to arrest.  Because the legality of a search incident to
arrest depends on the legality of the arrest, we first address the arrest.  See Commonwealth v. Washington, 449 Mass.
476, 481 (2007).  "A lawful arrest
requires the existence of probable cause to believe that the individual
arrested is committing or has committed a criminal offense."  Commonwealth v. Jackson, 464 Mass. 758, 761
(2013).  The defendant does not suggest
that his arrest was unlawful.  Nor could
he.  Here, the defendant and his
companion, while armed and masked, and carrying a backpack, broke into
apartment 402, all of which was observed in real time by the tenant and relayed
to police.  "In dealing with
probable cause . . . we deal with probabilities.  These are not technical; they are
. . . practical considerations of everyday life on which reasonable
and prudent [people], not legal technicians, act" (citation omitted).  Commonwealth v. Hason, 387 Mass. 169, 174
(1982).  Based on the detailed and
particularized facts known to police, Officer Irujo had probable cause to
arrest the defendant for breaking and entering a building with the intent to
commit a felony, as defined by G. L. c. 266, § 18.
      2. 
Search incident to arrest.  We now
turn to the seizure and search of the backpack. 
"Among the exceptions to the warrant requirement is a search
incident to a lawful arrest" (citation omitted).  Commonwealth v. Perkins, 465 Mass. 600, 605
(2013).  Pursuant to G. L.
c. 276, § 1, 
"[a] search
conducted incident to an arrest may be made only for the purposes of seizing
fruits, instrumentalities, contraband and other evidence of the crime for which
the arrest has been made, in order to prevent its destruction or concealment;
and removing any weapons that the arrestee might use to resist arrest or effect
his escape."  
As the Supreme
Judicial Court observed,
"The
purpose, long established, of a search incident to an arrest is to prevent an
individual from destroying or concealing evidence of the crime for which the
police have probable cause to arrest, or to prevent an individual from
acquiring a weapon to resist arrest or to facilitate an escape."  
Commonwealth v.
Santiago, 410 Mass. 737, 743 (1991).
      Here, the crime -- an armed breaking and
entering -- was observed and reported in real time; the events were rapidly
developing; "[s]econds" elapsed between the report of the crime and
Officer Irujo's arrival on the scene, his detection of the suspects, and the
realization that there were one or two unaccounted-for guns.  We view these facts using an objective
standard.  See Commonwealth v. Blevines,
438 Mass. 604, 608 (2003). 
      The defendant claims that here the search
incident to arrest exception to the warrant requirement does not apply because,
where the police had stopped and handcuffed him before turning their attention
to the backpack, the search "took place beyond the Defendant's reach at
the time of the search."  However,
as the Supreme Judicial Court held in Commonwealth v. Figueroa, 468 Mass. 204,
216 (2014), officers "may secure the arrestee and then safely search the
area within his immediate control at the moment of arrest."[5]  In so holding, the court recognized that
officer safety would be compromised if police were required "to seize all
evidence within the arrestee's immediate control before securing the
arrestee."[6]  Id. at 215.  To the extent that the defendant argues that
the statement in Figueroa is dicta, we are not persuaded.  There, in connection with a homicide
investigation, the defendant was handcuffed and removed from a bedroom, and the
police searched a duffel bag approximately five to six feet from where the
defendant had been found.  See id. at
208, 210.  The seizure of the duffel bag
was directly related to the question whether the police lawfully seized it
incident to the defendant's arrest.  See
id. at 215.  See also Commonwealth v.
Rahim, 441 Mass. 273, 284 (2004) (dicta defined as "language which was
unnecessary . . . and which passed upon an issue not really
presented" [quotations and citation omitted]).  That the Figueroa court also concluded that
there was a second ground for upholding the search does not transform into
dicta its discussion of the search incident to arrest.  See Figueroa, supra at 216 n.4.  Alternative holdings are still holdings; they
are not dicta.  See United States v.
Potts, 644 F.3d 233, 237 (5th Cir. 2011), cert. denied, 566 Mass. 923 (2012);
Surefoot LC v. Sure Foot Corp., 531 F.3d 1236, 1243 (10th Cir. 2008).
      The defendant's argument also fails to
account for the rapidly evolving facts in this case, including that the police
came on a scene where there were real time observations of a breaking and
entering in progress, where the intruders were armed and carrying a backpack,
and where Officer Irujo could reasonably be "primarily concerned with
locating the unaccounted-for handguns observed and reported by" the 911
caller.  When Officer Irujo first
encountered the intruders, neither had a weapon in plain view, and the backpack
was located immediately in or at the threshold to the apartment, within the
defendant's immediate reach as he left the apartment.  The search was not remote in time or place
from the arrest, and it was "a natural part of the arrest
transaction."  Commonwealth v.
Turner, 14 Mass. App. Ct. 1023, 1024 (1982). 
That the defendant was already in handcuffs is of no moment under
governing precedent, as 
"a police
officer's decision how and where to conduct the search is a quick ad hoc
judgment, and . . . [a] search incident to arrest may be valid even
though a court operating with the benefit of hindsight in an environment well
removed from the scene of the arrest doubts that the defendant could have
reached the items seized during the search" (quotations and citation
omitted).  
Commonwealth v.
Netto, 438 Mass. 686, 694-695 (2003).
      We conclude that it was reasonable to infer
that the backpack located in the doorway through which the defendant left the
apartment was the same backpack that the caller reported seeing in real time
during the armed break-in.  There was no
significant delay between the time of the defendant's arrest and the
search.  Contrast Commonwealth v. Pierre,
453 Mass. 1010, 1010 (2009) (search of bag too remote where bag taken from
defendant, placed in vehicle, towed from location, and searched more than
thirty minutes after arrest).  The
Supreme Judicial Court has said that to require the police to search such a
container before securing the arrestee "would compromise the safety of
arresting officers."  Figueroa, 468
Mass. at 215.  The court also has said
that "the pragmatic necessity of not invalidating . . . a search
the instant the risks pass is well accepted. . . .  [Officers] need not reorder the sequence of
their conduct during arrest simply to satisfy an artificial rule that would
link the validity of the search to the duration of the risks" (citation
omitted).  Netto, 438 Mass. at 695.  For all these reasons, we agree with the
judge's conclusion that, applying Figueroa and Netto, the seizure and search of
the backpack was a lawful search incident to a lawful arrest.
      3. 
Argument raised in motion for reconsideration.  For the first time in his motion for
reconsideration,[7] the defendant cited Arizona v. Gant, 556 U.S. 332 (2009)
(Gant), for the proposition that the permissible scope of a search incident to
arrest is coextensive with the arrestee's reaching distance at the time of the
search, not the time of the arrest.  The
judge rejected this argument, noting that (1) unlike this case, Gant involved
the search of a vehicle incident to arrest, and (2) unlike in Gant, the
police here had a basis on which to conclude that evidence of the crime under
investigation might be found in the backpack subject to their search.[8]  We discern no error in the judge's
conclusion; indeed, as we discuss below, we conclude that there were additional
reasons why Gant does not control here.
      In Gant, the defendant was arrested for
driving with a suspended license.  See
id. at 335.  While he was handcuffed and
placed in the back of a police cruiser, the police searched his car and found
cocaine in a jacket on the back seat.  See id. 
On these facts, the United States Supreme Court held that the search
incident to arrest exception to the Fourth Amendment's warrant requirement did
not justify the search, because the arrestee was not "unsecured and within
reaching distance of the passenger compartment at the time of the
search."  Id. at 343.  Rather, he was outnumbered by police,
handcuffed, and in a police cruiser.  See
id. at 344.  Thus, "police could not
reasonably have believed [that the arrestee] could have accessed his car at the
time of the search."  Id.  The Court further held "that
circumstances unique to the automobile context justify a search incident to
arrest when it is reasonable to believe that evidence of the offense of arrest
might be found in the vehicle."[9] 
Id. at 335.  Because the police
could not reasonably believe evidence of the crime (driving with a suspended
license) would be located in the passenger compartment of the car, the search
was deemed unlawful.  See id. at 344.
      Here, the defendant argues that the police
could not search the backpack without a warrant because at the time of the
search the defendant was handcuffed and under arrest, and the backpack was not
located in an automobile.  For a variety
of reasons, we are not persuaded.  First,
Gant involved an arrest for a motor vehicle violation and a subsequent
exploratory search; the defendant's argument does not account for searches
conducted under the circumstances present in this case.  See Figueroa, 468 Mass. at 215 (search
incident to arrest need not occur before securing arrestee because doing so
would "compromise the safety of arresting officers").  Next, Gant did not involve police officers
responding to an ongoing armed breaking and entering.  Further, Gant did not involve a crime where a
gun and backpack were observed in real time during commission of the
crime.  Additionally, Gant did not
involve a subsequent search for unaccounted-for guns that were used in the
crime, nor did Gant involve an arrestee who was handcuffed on the ground only
feet away from the backpack that was searched. 
Put differently, the facts of Gant did not present the same degree of
concern about safety or destruction of evidence that, under the rationale of
Figueroa and Netto, are present in this case.
      In support of his argument, the defendant
cites several Federal circuit court cases that have applied Gant,
including:  United States v. Davis, 997
F.3d 191 (4th Cir. 2021); United States v. Knapp, 917 F.3d 1161 (10th Cir.
2019); United States v. Cook, 808 F.3d 1195 (9th Cir. 2015); and United States
v. Shakir, 616 F.3d 315 (3d Cir.), cert. denied, 562 U.S. 1116 (2010).  In each of these cases, the circuit courts
applied Gant outside of the automobile context and held, in part, that the
focus of the inquiry is whether, at the time of the search (rather than the
time of arrest), the suspect "is unsecured and within reaching distance
of" the container sought to be searched. 
E.g., Davis, supra at 197, quoting Gant, 556 U.S. at 343.  In so doing, the circuit courts engaged in a
fact-intensive analysis that included whether it was reasonable to believe that
the defendant could break free from police and access the bag or container that
was searched.  See Davis, supra at 198,
200; Knapp, supra at 1168-1169; Cook, supra at 1199-1200; Shakir, supra at
318-321.  The circuit courts have
differed somewhat in their approaches to this inquiry as reflected by the
results they reached.  For example, the
United States Courts of Appeals for the Ninth Circuit in Cook and the Third
Circuit in Shakir affirmed the denial of the defendant's motion to suppress,
but the Fourth Circuit in Davis and the Tenth Circuit in Knapp reversed the
denial of the motion to suppress. 
      We acknowledge the differences between the
time of arrest test used in Figueroa and Netto on the one hand, and the time of
the search test used in Gant as interpreted by some Federal circuit courts on
the other.  Cf. Commonwealth v. Williams,
104 Mass. App. Ct. 498, 502-503 & n.5 (2024) (acknowledging
difference).  Notwithstanding that, under
Commonwealth v. Vasquez, 456 Mass. 350, 357 (2010), even "on an
interpretation of Federal constitutional law . . . so long as the
[Supreme Judicial Court's] holding has not been abrogated, it is the law the
[lower courts] must apply."  As a
result, the motion judge and we are bound by Figueroa and Netto, and therefore
the Federal cases do not change our analysis or the result.
      Conclusion.  We affirm so much of the order as denied the
motion to suppress evidence.
So ordered.

footnotes

[1] This item was
referred to in numerous ways at the hearing including bag, book bag, and
backpack.  For consistency we will refer
to it as a backpack.

[2] An audio
recording of the 911 call was played during the hearing and introduced in
evidence.

[3] As noted
supra, the judge suppressed this statement as obtained in violation of the
defendant's Miranda rights, and the Commonwealth did not appeal from that
decision.  See generally Miranda v.
Arizona, 384 U.S. 436 (1966).

[4] In his motion
to suppress, the defendant sought to suppress heroin, cash, and ammunition
"seized from the backpack," and a BB gun, butter knife, mask,
crowbar, and screwdriver "seized from his person."

[5] See
Commonwealth v. Elizondo, 428 Mass. 322, 324-325 (1998) (search of bathroom
lawful search incident to arrest where defendant handcuffed outside bathroom);
Commonwealth v. Dickerson, 372 Mass. 783, 786, 792 (1977), overruled on other
grounds, Commonwealth v. Paulding, 438 Mass. 1 (2002) (search of backpack at
foot of defendant's hospital bed lawful search incident to arrest where
defendant suffering from gunshot wounds and outnumbered by police);
Commonwealth v. Turner, 14 Mass. App. Ct. 1023, 1024 (1982) (search of
pillowcase and bag on floor outside hotel room lawful search incident to arrest
even though defendant taken inside adjacent room prior to search).  Cf. Commonwealth v. Madera, 402 Mass. 156,
160-161 (1988) (search of gym bag taken from defendant at time of arrest upheld
even though "the police presence was substantial and the risk of the
defendant successfully repossessing the bag was minimal").  

[6] Given the
Figueroa court's reliance in part on Federal decisions, see 468 Mass. at 215,
we view Figueroa as based at least in part on the Supreme Judicial Court's
understanding of the Fourth Amendment. 
The same is true of Commonwealth v. Netto, 438 Mass. 686, 695-696
(2003), discussed infra. 

[7] The
Commonwealth contends that the defendant waived any argument concerning the
application of Gant because he raised it for the first time in his motion for
reconsideration and did not appeal from the denial of that motion.  Although the better practice would have been
to identify, in the rule 12 (b) (6) agreement, the ruling on the
motion to reconsider as well as the ruling on the underlying motion, we
conclude that the issue concerning the application of Gant was sufficiently
raised and preserved for appellate review. 
Cf. Commonwealth v. Mathis, 76 Mass. App. Ct. 366, 374 (2010).

[8] In denying
the motion for reconsideration, the judge noted that Gant "stands for the
proposition that a search of a vehicle may be conducted incident to arrest if
the area searched is within reach of the defendant at the time of the arrest or
the police have a reasonable belief that evidence related to the crime would be
present."  The judge further stated
that "in addition to the reasons articulated in the [prior] memorandum;
given the police knowledge of a weapon, masks and a book bag being used in the
crime, it was a legitimate and reasonable conclusion that the back pack
contained evidence related to the crime."

[9] In so doing,
the Court emphasized Justice Scalia's caution against "purely exploratory
searches" as articulated in his concurrence in Thornton v. United States,
541 U.S. 615, 628 (2004).  See Gant, 556
U.S. at 335.