After a judge of the Juvenile Court denied his motion to suppress, a different judge found the juvenile guilty as a youthful offender on a charge of carrying a firearm without a license ( G. L. c. 269, § 10 [a ] ) and delinquent on a charge of trespassing ( G. L. c. 266, § 120 ). On appeal, the juvenile argues that the motion judge erred in denying his motion to suppress the gun he was charged with possessing on grounds that (1) several of the judge's findings were erroneous, and (2) the stop during which the gun was found was not justified by reasonable suspicion of criminal conduct.
"In reviewing a decision on a motion to suppress, 'we accept the judge's subsidiary findings of fact absent clear error but conduct an independent review of his ultimate findings and conclusions of law.' " Commonwealth v. Keefner, 461 Mass. 507, 515 (2012), quoting from Commonwealth v. Scott, 440 Mass. 642, 646 (2004). "[T]he clear error standard is a 'very limited form of review,' " wherein we defer to the resolution of conflicting evidence by the motion judge who heard the testimony and observed the witnesses. Commonwealth v. Sanna, 424 Mass. 92, 97 (1997), quoting from Commonwealth v. Yesilciman, 406 Mass. 736, 743 (1990). "We make an independent determination of the correctness of the judge's application of constitutional principles." Commonwealth v. Cassino, 474 Mass. 85, 88 (2016) (quotation omitted).
Facts.[2] On March 6, 2015, the police were alerted to a 9:27 P.M. ShotSpotter[3] activation in the area of 51 Forest Street in the Roxbury section of Boston. Two members of the Boston police department youth violence strike force were patrolling the area in an unmarked police cruiser. Because other police officers had already responded to the Forest Street location, at approximately 9:40 P.M. , the two youth violence strike force officers responded to Dudley Street in an area approximately 100 to 150 yards from Forest Street. The officers were familiar with this location as a high-crime area with gang activity and gun violence.
There, they observed three young men walking in the middle of the street, approximately one to one and one-half blocks from where the ShotSpotter was activated. The police officers then drove their cruiser up to the three men and asked, "What's up?" One of the young men approached the cruiser, while the other two, including the juvenile, continued walking away from the vehicle. One of the officers then got out of the cruiser and walked towards the juvenile and the other man saying, "What's up? What's going on?" As the officer got closer to the two men, they "simultaneously grabbed their left waistband[s] and started running." The officers then pursued both men, ordering them to show their hands, and eventually stopped them.
Discussion. 1. Erroneous findings. The juvenile contends that the judge made several clearly erroneous findings that were critical to her determination of reasonable suspicion. We review the juvenile's claim in light of the entire record. See Commonwealth v. Castillo, 89 Mass. App. Ct. 779, 781 (2016) (findings are "clearly erroneous" when, although there is record support, reviewing court is left with "definite and firm conviction that a mistake has been committed" [quotation omitted] ).
The juvenile's first claim is that the judge found that the police first located the juvenile at 9:40 P.M. , when the evidence was 9:46 P.M. This six-minute discrepancy does not constitute a clearly erroneous fact, particularly where the judge prefaced her finding with the word "approximately" before the time. Although a lengthy delay between the time of the ShotSpotter activation and the location of the juvenile is a factor to be considered in a reasonable suspicion analysis, this six-minute difference does not alter the calculus here. The evidence supports the judge's finding that the juvenile was located within a relatively short time after the ShotStopper alert.
The juvenile's next claim is that the judge erroneously termed the location of the stop as a "high crime area with gang activity and gun violence" without any evidentiary support. Contrary to this claim, the police officers testified that they were familiar with the area because they patrolled it due to the high incidence of gun-related violence and that rival gangs congregated in the area. See Commonwealth v. Jones-Pannell, 472 Mass. 429, 435 (2015) (high crime area is factual determination and can be based on "locations where firearms offenses are common, or where rival gang activity occurs").
Lastly, the juvenile claims that the judge's consideration of the officers' experience was erroneous as there was no evidence on this point. To the contrary, one of the officers testified that after the juvenile and a codefendant grabbed their waistbands, he followed them because, based on his "training and experience, characteristics of an armed gunman, [and] the nature of the call, [he] believed they might have been in possession of a firearm." That officer's experience included working for three years with the youth violence strike force, which primarily responds to incidents of gun violence. This experience permitted the officer to draw the conclusion that the juvenile's waistband grab suggested that he had a weapon. This conclusion is also supported by decisional law. See, e.g., Commonwealth v. Sykes, 449 Mass. 308, 314-315 (2007) ; Commonwealth v. Resende, 474 Mass. 455, 461 (2016). Thus, the judge's findings were supported by the evidence and reasonable inferences therefrom. See Commonwealth v. Kennedy, 426 Mass. 703, 707 (1998).
2. Reasonable suspicion. The juvenile argues that the police did not have reasonable suspicion to believe that he was engaged in criminal conduct in order to justify a threshold inquiry. We note that the initial approach to the juvenile and the inquiry, "What's up?" did not constitute a seizure. See, e.g., Commonwealth v. Stoute, 422 Mass. 782, 786 (1996) ; Commonwealth v. Lopez, 451 Mass. 608, 611 (2008). Although the police officer followed the juvenile and continued to attempt to talk to him, the officer did not impede the juvenile's movements, nor did he give the juvenile any commands. Compare Commonwealth v. Barros, 435 Mass. 171, 176 (2001) (after defendant ignored police request to speak with him, officer walked up to defendant, pointed at him and said, "Hey you. I wanna talk to you. Come here"); Commonwealth v. Evans, 87 Mass. App. Ct. 687, 691-692 (2015) (although police car pulling up alongside defendant did not constitute seizure, stop occurred when officers walked up to him, asked him to identify himself, where he was going, what he was doing, and what was in his mouth).
The stop occurred when the officers ordered the juvenile to show his hands and then pursued him. At that point, the police knew that there had been a ShotStopper alert about twenty minutes earlier in that area, that the area was one of high crime, and that when they attempted to speak with the juvenile, the juvenile grabbed his waist, consistent with someone who was armed, and fled. Under these circumstances, the motion judge properly found that the investigatory stop was constitutionally justified because the facts demonstrated reasonable suspicion that the juvenile seized was carrying a firearm. See, e.g., Commonwealth v. DePeiza, 449 Mass. 367, 373 (2007) ; Commonwealth v. Jeudy, 75 Mass. App. Ct. 579, 582-583 (2009). There was no error.
Judgment affirmed.
Adjudication of delinquency affirmed.

The facts are taken from the motion judge's findings, dictated from the bench, supplemented by undisputed evidence implicitly credited by the motion judge.

A ShotSpotter is a device designed to detect gunshots.