**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

OSHAN COOK,

*Defendant-Appellant*.

No. 13-10233

D.C. No.
3:10-cr-00376-
JSW-3

ORDER AND
AMENDED
OPINION

Appeal from the United States District Court
for the Northern District of California
Jeffrey S. White, District Judge, Presiding

Argued and Submitted
January 13, 2015—San Francisco, California

Filed August 13, 2015
Amended December 24, 2015

Before: Richard R. Clifton and Jacqueline H. Nguyen,
Circuit Judges and Jed S. Rakoff,* Senior District Judge.

---

* The Honorable Jed S. Rakoff, Senior District Judge for the U.S.
District Court for the Southern District of New York, sitting by
designation.

Order;
Opinion by Judge Nguyen

**SUMMARY**[**]

**Criminal Law**

Affirming convictions for conspiracy to possess with intent to distribute MDMA and possession with intent to distribute MDMA and LSD, the panel held that a search of the defendant's backpack did not violate his Fourth Amendment rights.

The panel held that the district court did not err in denying the defendant's motion to suppress evidence seized from his backpack because the brief, cursory search of the backpack for weapons was incident to a lawful arrest. In addition, the district court did not abuse its discretion in failing to hold an evidentiary hearing on the motion to suppress.

The panel also held that any Confrontation Clause violation in allowing law enforcement agents to testify about an identification of the defendant as the drug supplier was harmless.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

David J. Pullman, San Rafael, California, for Defendant-Appellant.

Owen P. Martikan (argued), Assistant United States Attorney; Melinda Haag, United States Attorney; Barbara J. Valliere, Chief, Appellate Division, United States Attorney's Office, San Francisco, California, for Plaintiff-Appellee.

**ORDER**

The opinion filed on August 13, 2015 and published at 797 F.3d 713 is hereby withdrawn and replaced by the amended opinion filed concurrently with this order. With these amendments, Judges Clifton, Nguyen, and Rakoff have voted to deny the petition for panel rehearing, Judges Clifton and Nguyen have voted to deny the petition for rehearing en banc, and Judge Rakoff has so recommended. The full court has been advised of the petition for rehearing en banc, and no judge requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35. The petitions for panel rehearing and rehearing en banc are **denied**. No further petitions for panel rehearing or rehearing en banc will be entertained.

**OPINION**

NGUYEN, Circuit Judge:

Oshan Cook appeals his convictions for conspiracy to possess with intent to distribute MDMA (also known as ecstasy or Molly) and possession with intent to distribute

MDMA and LSD.  Cook mainly challenges the denial of his motions to suppress the evidence seized from his backpack, arguing that the search violated his Fourth Amendment rights.  We conclude, however, that the brief, cursory search of Cook's backpack for weapons was valid incident to a lawful arrest, and thus the district court properly denied Cook's motions.  Because we also reject Cook's remaining challenges, we affirm.

# I

## A

Working with an informant, undercover agents from the Drug Enforcement Administration arranged to buy MDMA from Yuri Lambert and James Edmonds.  On the morning of April 22, 2010, about thirty minutes before the scheduled sale, agents were surveilling Lambert's house on 63rd Street in Oakland, California, when they saw Cook carrying a backpack into the house.  The agents concluded that Cook likely dropped something off while inside the house because, when he left a short time later, his backpack appeared less full and lighter.  About fifteen minutes after Cook left the house, Lambert and Edmonds also came out of the same house and headed to the location where the drug deal was to take place.  After Edmonds showed undercover Special Agent Jay Dial the MDMA that he intended to sell, both Lambert and Edmonds were arrested.  During a post-arrest interview, Edmonds identified Cook as his supplier, and said that he had been dealing drugs with Cook "on and off for five years."

The agents then took Edmonds back to Lambert's house on 63rd Street, where they found two firearms.  At the agents' direction, Edmonds placed a monitored call to Cook.  When Edmonds told Cook that the sale had gone through, Cook responded, "Hallelujah.  Okay, I'll see you soon."

About fifteen minutes later, Cook arrived at the 63rd Street residence, and when he got out of his car, he wore the same backpack that the agents had observed on him during their surveillance.  As Cook approached the front porch, the agents ordered him to the ground at gunpoint.  While they were placing handcuffs on him, Task Force Officer Robert Knight came onto the scene.  By this time, a crowd had gathered, and even though there were six law enforcement agents at the scene—three near Cook and three by Cook's car—they were concerned that additional, unidentified coconspirators or others might interfere if they continued to attract attention.  Thus, the agents wanted to move immediately out of the area.

While Cook was still on the ground and within one or two minutes of his arrest, Officer Knight picked up the backpack, which was right next to Cook, and conducted a twenty or thirty-second cursory search for weapons or contraband.  Finding no weapons, the agents quickly moved Cook and the backpack to a more secluded restaurant parking lot a few blocks away.  There, Officer Knight and Special Agent Dial did a more thorough search of the backpack.  During this second search, they found ziplock bags containing MDMA, LSD, marijuana, two mobile phones, and a laptop.  The purity level of the MDMA found in Cook's backpack matched that of the MDMA seized from Edmonds at the drug buy.

## B

Cook was indicted for conspiracy to possess with intent to distribute MDMA, possession with intent to distribute MDMA, and possession with intent to distribute more than 10 grams of LSD, in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(C), 841(b)(1)(A)(v).

Prior to trial, on September 9, 2011, Cook filed a motion to suppress the evidence from his backpack.  In support of his motion, Cook submitted a declaration, stating that during the few minutes that he was face down on the ground, he did not see anyone open or search his backpack.  In opposition, the government submitted a declaration from Officer Knight, stating that, while Cook was still on the ground, he "immediately conducted a quick search of [the backpack] to make sure that there were no destructive devices or other items that might pose an immediate danger."  The government also argued in its opposition papers that because Cook was face down on the ground, he "was in no position to have personal knowledge of when and how the search was completed."  Cook filed a reply brief, but rather than dispute that the initial search occurred, he conceded "that he [did] not know when the search occurred."  Instead, Cook's reply brief focused only on his legal arguments for suppression of the evidence.

On November 2, 2011, the district court issued a written order stating that it was inclined to deny the motion, but asking Cook to respond to the following questions:  "Is the Court correct that Defendant believes the motion can be resolved without an evidentiary hearing?  If not, what facts does Defendant contend are in dispute?"  The next day, during a hearing on Cook's motion, the court invited him to answer the questions it had posed.  Cook did not ask for an evidentiary hearing, failed to dispute that the first search occurred, and failed to identify any particular factual dispute.  Instead, he raised a new challenge that there was no probable cause to arrest him.  The court continued the hearing and allowed Cook to file a supplemental brief addressing probable cause.  Cook later did so, but still did not identify a factual dispute.  On December 22, 2011, the district court denied Cook's motion without an evidentiary hearing.

After Cook's first trial ended in a mistrial, on August 30, 2012, he renewed his motion to suppress and, for the first time, claimed that the initial search of his backpack did not occur at all.  Cook argued that inconsistencies between Officer Knight's and Special Agent Dial's trial testimony showed that the initial search was a "*post-hoc* invention." The district court, without holding an evidentiary hearing, denied Cook's motion.  The court explained that it had the opportunity during the trial to assess the credibility of the testifying agents, and there was "no basis to discredit" Officer Knight's testimony that the first search occurred.

Following a second trial, the jury convicted Cook on November 1, 2012 of conspiracy to possess with intent to distribute and possession with intent to distribute illegal narcotics.  On March 6, 2013, Cook again renewed his motion to suppress.  This time, he focused on Special Agent Dial's admission that his testimony during the first trial was incorrect.  Special Agent Dial had testified that he was present at the first search of Cook's backpack, when in fact he was only there during the second, more thorough search. The district court again denied an evidentiary hearing, because it concluded that it already had a sufficient basis to evaluate the witnesses' credibility, having heard their testimony at two trials.  It found that there was "no basis to discredit [Special Agent Dial's] testimony that he simply made a mistake about his participation in the initial search of Cook's backpack."  The court denied Cook's motion.  This appeal followed.

## II

Cook argues that the first search violated his rights under the Fourth Amendment.  The government counters that the search was incident to a lawful arrest, and thus fell within that exception to the warrant requirement.  As an initial

matter, although the evidence Cook seeks to suppress was found during the second search of his backpack, which occurred at a nearby restaurant parking lot, Cook only challenges the first search that occurred at the scene of his arrest. This is because Cook recognizes that if that search was valid, then the second warrantless search was permitted "so long as [his backpack] remain[ed] in the legitimate uninterrupted possession of the police." *United States v. Burnette*, 698 F.2d 1038, 1049 (9th Cir. 1983). We review a denial of a motion to suppress evidence de novo. *United States v. Maddox*, 614 F.3d 1046, 1048 (9th Cir. 2010).

## A

A search incident to a lawful arrest is a well-established exception to the Fourth Amendment's warrant requirement. *See Arizona v. Gant*, 556 U.S. 332, 338 (2009). This exception allows an officer to search "the arrestee's person and the area 'within his immediate control,'" defined as "the area from within which he might gain possession of a weapon or destructible evidence." *Chimel v. California*, 395 U.S. 752, 763 (1969). As the Supreme Court explained in *Gant*, the "immediate control" requirement "ensures that the scope of a search incident to arrest is commensurate with its purposes of protecting arresting officers and safeguarding any evidence of the offense of arrest that an arrestee might conceal or destroy." 556 U.S. at 339. The Court in *Gant* held that the officers' search of Gant's car was unreasonable because, prior to the search, Gant and two other arrestees were already handcuffed and locked inside separate police

cars. Thus, "Gant clearly was not within reaching distance of his car at the time of the search." *Id*. at 344.[1]

In evaluating the reasonableness of a search incident to arrest, we have examined not only whether the area searched was within the arrestee's "immediate control," but also whether any event occurred after the arrest that rendered the search unreasonable. *Maddox*, 614 F.3d at 1048. While "[t]here is no fixed outer limit for the number of minutes that may pass between an arrest and a valid, warrantless search," *United States v. McLaughlin*, 170 F.3d 889, 892 (9th Cir. 1999), we have said that the search must be "spatially and temporally incident to the arrest," *United States v. Camou*, 773 F.3d 932, 937 (9th Cir. 2014). *See also United States v. Smith*, 389 F.3d 944, 951 (9th Cir. 2004) (per curiam) (interpreting the temporal requirement to mean that the search must be "roughly contemporaneous with the arrest"); *United States v. Monclavo-Cruz*, 662 F.2d 1285, 1288 (9th Cir. 1981) (holding that the search of the purse of an arrestee "more than an hour after her arrest at the station house" was not valid incident to arrest).

## B

Cook argues that the initial search of his backpack was not valid incident to arrest because he was handcuffed at the time of the search, and thus there was no reasonable concern for officer safety or evidence destruction.

We agree that Cook's position at the time of the search— face down on the ground with his hands cuffed behind his

---

[1] We do not read *Gant*'s holding as limited only to automobile searches because the Court tethered its rationale to the concerns articulated in *Chimel*, which involved a search of an arrestee's home. *Gant*, 556 U.S. at 342-43. Neither party in this case contends otherwise.

back—is a highly relevant fact in determining whether the search was justified. Yet Cook's argument ignores other countervailing facts that we must also consider. The search, both quick and cursory, was "spatially and temporally incident to the arrest." *Camou*, 773 F.3d at 937. It occurred immediately after Officer Knight arrived on the scene, as Cook was being taken into custody. Cook's backpack was right next to him. And, within twenty to thirty seconds, as soon as Officer Knight determined that the backpack contained no weapons, he immediately stopped the search. The brief and limited nature of the search, its immediacy to the time of arrest, and the location of the backpack ensured that the search was "commensurate with its purposes of protecting arresting officers and safeguarding any evidence of the offense of arrest that [Cook] might conceal or destroy." *Gant*, 556 U.S. at 339.

Cook relies heavily on *Gant*, but the circumstances here are entirely different. Unlike Gant, who was arrested for driving on a suspended license, Cook was arrested for serious felony drug offenses. Significantly, Gant was locked inside a patrol car, while Cook's backpack was easily within "reaching distance." *Id.* at 344. The fact that Cook was already handcuffed is significant, but not dispositive. *See United States v. Sanders*, 994 F.2d 200, 209 (5th Cir. 1993) (stating that "[a]lbeit difficult, it is by no means impossible for a handcuffed person to obtain and use a weapon concealed on his person or within lunge reach, and . . . like any mechanical device, handcuffs can and do fail on occasion"). We cannot say here that there was no reasonable possibility that Cook could break free and reach for a backpack next to him. *Gant*, 556 U.S. at 339.

Moreover, contrary to Cook's claim, the agents' safety concerns were objectively reasonable. The agents had reason to believe that Cook used the same backpack earlier

in the day to transport drugs, and they had already recovered two firearms from the house associated with Cook's co-conspirator. That Cook's arrest took place in front of the same house, and a crowd had gathered nearby, heightened the agents' reasonable fear that a bystander or additional unidentified co-conspirator might intervene. Under the totality of the circumstances, we conclude that the search of Cook's backpack was reasonable and valid incident to arrest. *See United States v. Robinson*, 414 U.S. 218, 235 (1973) (stating that an officer's decision to search incident to arrest "is necessarily a quick and ad hoc judgment" that need not "be broken down in each instance into analysis of each step of the search"). Therefore, the district court properly denied his motions.

We note that under similar facts, our sister circuit reached the same conclusion, in a case cited by both parties. In *United States v. Shakir*, the Third Circuit found that a search of a duffel bag, which Shakir had dropped at his feet when he was arrested, was reasonable. 616 F.3d 315, 321 (3d Cir. 2010). Shakir's hands were already cuffed, and two officers were holding his arms, when another officer bent down and searched the bag. *Id.* at 317. The Third Circuit considered the circumstances of the arrest and search, including the location of the arrest in a hotel lobby with many people around, the fact that Shakir's duffel bag was right at his feet, and the officers' concern that accomplices were nearby. *Id.* at 319. Upholding the search, the *Shakir* court concluded that "there remained a sufficient possibility that Shakir could access a weapon in his bag." *Id.* at 321. Much of the same analysis, as we discussed, applies here. As Cook points out, there are factual differences in his case. For example, Shakir was standing up, and his large size made it initially difficult to handcuff him, whereas Cook's build is slight and he was face down on the ground. None of

the factual distinctions relied on by Cook, however, are sufficient to alter our analysis.

## III

We next turn to Cook's claim that the district court abused its discretion in failing to hold an evidentiary hearing to determine whether the initial search of his backpack actually occurred.

"An evidentiary hearing on a motion to suppress need be held only when the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that contested issues of fact exist." *United States v. Howell*, 231 F.3d 615, 620 (9th Cir. 2000); *see also United States v. Batiste*, 868 F.2d 1089, 1093 (9th Cir. 1989) (stating that the district court was not required to hold an evidentiary hearing on the defendant's motion to suppress where the defendant failed to dispute any material fact in the government's proffer). We review the district court's denial of an evidentiary hearing for abuse of discretion. *See United States v. Hoang*, 486 F.3d 1156, 1163 (9th Cir. 2007).

Cook's first motion to suppress failed to raise a material factual dispute. The district court nevertheless invited Cook to clarify by directing him to confirm that "the motion can be resolved without an evidentiary hearing" and to identify facts that Cook "contend[s] are in dispute." In response, Cook neither asked for an evidentiary hearing nor identified a single disputed fact. He instead focused on a new legal argument that his arrest was not supported by probable cause. In short, because Cook failed to "allege facts with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that contested issues of fact exist," the court did not abuse its discretion in failing to hold an evidentiary hearing. *Howell*, 231 F.3d at 620.

Cook now contends that he in fact identified a factual dispute by arguing below that Officer Knight's first search was "manufactured for the purpose of legitimatizing an otherwise unlawful search." What Cook fails to acknowledge, however, is that he raised this claim only *after* his first trial. By that point, the district court had already heard trial testimony from the law enforcement witnesses—Officer Knight and Special Agent Dial—who Cook would have called in support of his motion. Because Cook had already cross-examined these witnesses' accounts of the first search, the district court could use "[t]estimony at trial . . . to sustain the denial of a motion to suppress evidence." *United States v. Sanford*, 673 F.2d 1070, 1072 (9th Cir. 1982). This is especially true where, as here, Cook never proffered in his renewed motions that, at an evidentiary hearing, he would testify to an alternate version of the moments after his arrest. *United States v. Hernandez-Acuna*, 498 F.3d 942, 945 (9th Cir. 2007) (holding that even though "trials serve a different function from evidentiary hearings," a district court could dispense with an evidentiary hearing on a motion to suppress in light of the defendant's opportunity to cross-examine at trial the only witnesses who would have testified at a suppression hearing before the court). As the district court stated, it had the opportunity to observe the demeanor of the witnesses, and to assess their testimony and credibility during two trials. Thus, the district court did not abuse its discretion in determining that no evidentiary hearing was necessary.

## IV

Finally, Cook argues that his rights under the Sixth Amendment's Confrontation Clause were violated because the agents were allowed to testify about Edmonds's identification of him as the supplier, even though Edmonds was not a trial witness. We need not decide whether the

district court erred because, even if it did, any error was harmless.  The evidence implicating Cook in the conspiracy as the supplier was compelling.  Shortly before the drug buy, the agents saw Cook appear to drop something off from his backpack at Lambert's house.  After Edmonds was arrested, he placed a monitored phone call to Cook, who expressed his satisfaction that the deal had gone through.  Cook then came to Lambert's house with the same backpack that he had carried earlier, and the backpack contained MDMA of the same purity as the MDMA that Edmonds had offered to the agents.   Thus, any error in admitting Edmonds's identification of Cook as his supplier was "harmless beyond a reasonable doubt."  *United States v. Morales*, 720 F.3d 1194, 1199 (9th Cir. 2013).

***

The district court properly denied Cook's motions to suppress because the search of his backpack was valid incident to arrest.  We further conclude that the district court's failure to hold an evidentiary hearing was not an abuse of discretion, and any error in the court's evidentiary rulings was harmless beyond a reasonable doubt.

**AFFIRMED.**