FOR PUBLICATION

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

GREGORY MAHRT,
      *Petitioner-Appellee*,

v.

JEFFREY A. BEARD, Secretary of
the California Department of
Corrections and Rehabilitation;
STU SHERMAN, Warden,
      *Respondents-Appellants*.

No. 15-16404

D.C. No.
1:14-cv-01696-NJV

OPINION

Appeal from the United States District Court
for the Northern District of California
Nandor J. Vadas, Magistrate Judge, Presiding

Argued and Submitted September 14, 2016
San Francisco, California

Filed March 1, 2017

Before: William A. Fletcher, Morgan B. Christen,
and Michelle T. Friedland, Circuit Judges.

Opinion by Judge W. Fletcher

## SUMMARY[*]

### Habeas Corpus

The panel reversed the district court's grant of a habeas corpus petition in which a California state prisoner alleged that his Sixth Amendment right to effective assistance of counsel was violated by trial counsel's failure to bring a pre-plea suppression motion.

The panel held that the petitioner's ineffective assistance of counsel claim is not barred by *Tollett v. Henderson*, 411 U.S. 258 (1973), which, properly understood, does not bar federal habeas claims of pre-plea ineffective assistance of counsel when the action, or inaction, of counsel prevents petitioner from making an informed choice whether to plead. The panel explained that if the deputies unconstitutionally searched the petitioner's home, counsel's failure to move to suppress the fruits of that search prevented him from making an informed choice whether to plead.

The panel wrote that counsel should have moved to suppress the firearm and ammunition found in the petitioner's home, but concluded that the state habeas courts were not unreasonable in denying the writ because it would have been reasonable for the state courts to conclude that a motion to suppress, if brought, would likely have been denied.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Pamela K. Critchfield (argued), Deputy Attorney General; Peggy S. Ruffra and Jeffrey M. Laurence, Supervising Deputy Attorneys General; Office of the Attorney General, San Francisco, California, for Respondents-Appellants.

Paul Kleven (argued), Law Offices of Paul Kleven, Berkeley, California, for Petitioner-Appellee.

**OPINION**

W. FLETCHER, Circuit Judge:

The State of California appeals from a grant of habeas corpus to Petitioner Gregory Mahrt. The district court found that Mahrt's state-court guilty plea rested on a violation of his Sixth Amendment right to effective assistance of counsel. For the reasons that follow, we reverse.

## I. Factual Background

On September 3, 2012, at approximately 10:00 p.m., Sonoma County Sheriff's deputies were dispatched to a residence in Petaluma, California. A neighbor had reported that a "male and female subject [were] arguing over a gun." The property was owned by Robyn Ryan, the mother of Petitioner-Appellee Gregory Mahrt's ex-girlfriend, Tracy Ryan. Mahrt was living in a garage on the property that had been converted into a room.

As the deputies approached the property, Mahrt walked out and met them at the front gate. The deputies detained

Mahrt and asked about the argument and the gun. In a written "Incident/Investigation Report," Deputy Yoder described Mahrt as initially "uncooperative." According to Deputy Yoder's report, Mahrt told the deputies that Tracy had left before they arrived. Robyn Ryan stated in a sworn declaration that she likewise had informed the deputies that Tracy had "left the area" before they arrived, and that she had provided this information to the deputies before any search.

The deputies conducted what Deputy Yoder's report characterizes as a "protective sweep" of Mahrt's room in the garage. According to the report, the deputies felt justified in conducting this warrantless search "[d]ue to the report of the possible domestic incident and the mention of a deadly weapon" and because Mahrt "may [have been] attempting to conceal a victim inside." As the deputies approached the garage, Mahrt "began yelling that he did not want [the officers] to enter his room." The deputies found no one inside Mahrt's room.

According to the report, the deputies observed ammunition cans, ammunition, and what appeared to be an AR-15 Rifle (later determined to be a replica). Upon determining that no one was in the room, and after observing the firearm-related materials, the deputies discontinued their search of the garage.

According to the report, the deputies subsequently learned that Mahrt had a prior felony conviction and arrested him for being a felon in possession of ammunition. The deputies then asked Mahrt for permission to search his room, and Mahrt consented. The deputies conducted a second search of the room. They found additional ammunition, rifle magazines, and two firearms.

In a sworn declaration, Mahrt described only one search of his room. He insisted that he did not consent to the search. He stated in his declaration:

> I saw several deputies approach the room, and stated that they did not have permission to search it, but they ignored me. The deputies searched the room for close to an hour. Inside the room were closed green boxes that contained ammunition, and a locked guitar case that contained a shotgun and an AK-47 rifle. . . . After the deputies completed their search of the room, the deputy in charge, Deputy Yoder, approached and asked me to sign a written form waiving my right to object to the search. When I refused, the deputy I had been talking to about my [frightened three-year-old] son threatened that if I did not sign the waiver form, the SWAT team would tear the entire place up for the next twelve hours right in front of my son. I believe that his threat was recorded on the dash camera. Based on the threat, I signed the form and recorded a statement to the effect that the waiver was given voluntarily.

According to Deputy Yoder's report, further investigation "verified that [Tracy Ryan] was not a victim of Domestic Violence."

## II. Prior Judicial Proceedings

On September 5, 2012, the State of California charged Mahrt with having been a felon in possession of a firearm and

ammunition in violation of California Penal Code
§ 29800(a)(1) and § 30305(a)(1). Mahrt believed that the
warrantless search (or searches) of the garage was (or were)
illegal. However, neither of the two public defenders who
represented him at the trial court level moved to suppress the
firearms and ammunition recovered from his room.

Mahrt's first public defender, Anderson Thomas,
represented Mahrt for just over a month while his case was
being considered for early resolution. Mahrt's state-court
habeas corpus attorney, Paul Kleven, states in a sworn
declaration that Thomas originally told him that he did not
recall discussing a motion to suppress with Mahrt. However,
after checking his files, Thomas corrected himself, telling
Kleven that he "did recall Mr. Mahrt telling him that the
police should not have been allowed to search." Kleven
states that Thomas recounted to him that he told Mahrt "the
search was justified under the circumstances." Mahrt states
in his declaration that no such conversation occurred.

Mahrt's second public defender, Christina Davis, took
over from Thomas and represented Mahrt thereafter in the
trial court. Kleven states in a sworn declaration that he twice
spoke to Davis, who told him both times "that she did not
recall ever discussing a motion to suppress with Mr. Mahrt."
Kleven drafted a proposed declaration to that effect, but
Davis never signed it. On November 2, 2012, Mahrt filed a
*Marsden* motion seeking to replace Davis as his court-
appointed counsel. *See People v. Marsden*, 465 P.2d 44 (Cal.
1970). A "*Marsden* motion" is the California procedural
mechanism through which a criminal defendant "seeks to
discharge his appointed counsel and substitute another
attorney" on the ground that he has received inadequate
representation. *People v. Barnett*, 954 P.2d 384, 409 (Cal.

1998) (quoting *People v. Memro*, 905 P.2d 1305, 1343 (Cal. 1995)); *see also John-Charles v. California*, 646 F.3d 1243, 1245 n.1 (9th Cir. 2011). During his *Marsden* hearing, Mahrt said he was dissatisfied with Davis because she had not returned his phone calls, had made him feel "less important," and had left Mahrt "not feeling like [he was] being represented." Mahrt did not raise the issue of Davis's failure to file a suppression motion. The judge denied the request for new counsel.

A few weeks later, while still represented by Davis, Mahrt pleaded guilty to both charges pursuant to an open plea agreement. Mahrt's signed waiver form has a circle around "no contest" rather than "guilty," but Mahrt unambiguously pleaded "guilty" during his change of plea hearing, and the state trial court record says that he pleaded guilty. Under an "open plea" in California, the defendant pleads guilty without any promises from the government. *People v. Cuevas*, 187 P.3d 30, 34–35 (Cal. 2008). Mahrt faced a maximum prison sentence of seven years and four months. He received a six-year sentence.

On appeal, Mahrt's appointed counsel did not raise any issues. Instead, his counsel filed a "*Wende*" brief, the California analogue to an *Anders* brief. A *Wende* brief is filed when a California appellate attorney concludes that an appeal would be frivolous. *See Smith v. Robbins*, 528 U.S. 259, 265 (2000); *People v. Wende*, 600 P.2d 1071, 1074–75 (Cal. 1979). On November 27, 2013, the California Court of Appeal affirmed Mahrt's conviction.

With the assistance of counsel, Mahrt filed a state habeas petition in the Court of Appeal. The petition alleged that the warrantless search of Mahrt's room violated the Fourth

Amendment and that defense counsel provided ineffective assistance of counsel by failing to move to suppress the firearms and ammunition recovered during the search. The Court of Appeal summarily denied Mahrt's habeas petition. The California Supreme Court also summarily denied his petition.

On April 11, 2014, Mahrt filed a federal habeas petition pursuant to 28 U.S.C. § 2254(d). The petition alleged that Mahrt's Sixth Amendment right to effective assistance of counsel was violated by his trial counsels' failure to move to suppress the firearms and ammunition found in his room. A magistrate judge, sitting by consent, granted Mahrt's petition. *See* 28 U.S.C. § 636(c). The State timely appealed.

## III.  Standard of Review

We review de novo the district court's grant of habeas corpus. *Lambert v. Blodgett*, 393 F.3d 943, 964 (9th Cir. 2004). We review factual findings for clear error. *Id.*

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), we may not grant Mahrt's application for a writ of habeas corpus with respect to any claim adjudicated on the merits in state court unless the state adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id*. § 2254(d)(2).

"A state court decision is 'contrary to' clearly established Supreme Court precedent if the state court applies a rule that contradicts the governing law set forth in Supreme Court cases *or* if the state court confronts a set of facts materially indistinguishable from those at issue in a decision of the Supreme Court and, nevertheless, arrives at a result different from its precedent." *Moses v. Payne*, 555 F.3d 742, 751 (9th Cir. 2008) (citation omitted).

A state-court adjudication "involves an unreasonable application of th[e] [Supreme] Court's precedent if the state court identifies the correct governing legal rule from th[e] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 407 (2000). In order to satisfy the "unreasonable application" prong of § 2254(d)(1), the state court decision "must be objectively unreasonable, not merely wrong." *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (per curiam) (quoting *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014)).

Where, as here, there is no reasoned state court decision analyzing the state prisoner's constitutional claim, we "determine what arguments or theories . . . could have supported[] the state court's decision" and then determine whether application of those hypothetical theories would have been reasonable. *Harrington v. Richter*, 562 U.S. 86, 102 (2011); *Murray v. Schriro*, 745 F.3d 984, 996 (9th Cir. 2014). Habeas relief is warranted only if "there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98.

## IV. Discussion

The State makes two arguments. First, it argues that under *Tollett v. Henderson*, 411 U.S. 258 (1973), Mahrt's ineffective assistance of counsel claim is not cognizable on federal habeas review because it rests upon an alleged constitutional violation that preceded his guilty plea. Second, the State argues that even if Mahrt's claim is cognizable, the state court's rejection of the claim was not contrary to or an unreasonable application of established law as determined by the Supreme Court. We hold that *Tollett* does not bar Mahrt's ineffective assistance of counsel claim. We hold further that the state court could reasonably have concluded that Mahrt's counsel did not provide ineffective assistance in failing to move to suppress the firearms and ammunition.

### A. *Tollett* and Ineffective Assistance of Counsel

In *Tollett v. Henderson*, 411 U.S. 258 (1973), a state prisoner sought federal habeas relief on the ground that the indictment to which he had pleaded guilty had been returned by a constitutionally defective grand jury. Reasoning that "a guilty plea represents a break in the chain of events which has preceded it in the criminal process," the Supreme Court denied relief. *Id.* at 267. It held that "[w]hen a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Id.* However, the Court in *Tollett* made clear that there is an exception to the general rule barring federal habeas relief arising out of pre-plea constitutional violations. The Court wrote that a habeas petitioner may "attack the voluntary and intelligent character

of the guilty plea" based on pre-plea ineffective assistance of counsel "by showing that the advice he received from counsel was not within the" "range of competence demanded of attorneys in criminal cases." *Id.* at 267–68 (internal quotations omitted).

The State argues that *Tollett*'s "voluntary and intelligent . . . plea" exception applies only to ineffective assistance rendered when providing incompetent advice concerning the guilty plea itself, and not to ineffective assistance rendered in other pre-plea contexts. On this interpretation of *Tollett*, a claim that counsel provided incorrect advice about minimum and maximum sentences or parole eligibility would not be barred, but a claim, like the one brought by Mahrt, that defendant received deficient representation in connection with a pre-plea suppression motion, would be barred.

The *Tollett* exception is not as narrow as the State contends. *Tollett*, properly understood, provides that although freestanding constitutional claims are unavailable to habeas petitioners who plead guilty, claims of pre-plea ineffective assistance of counsel are cognizable on federal habeas review when the action, or inaction, of counsel prevents petitioner from making an informed choice whether to plead. *See Tollett*, 411 U.S. at 267–69; *see also United States v. Broce*, 488 U.S. 563, 574 (1989) (suggesting that a "failure by counsel to provide advice [on a double jeopardy defense] may form the basis of a claim of ineffective assistance of counsel" and could "serve as the predicate for setting aside a valid plea."); *McMann v. Richardson*, 397 U.S. 759, 772 (1970) (stating that "a plea of guilty in a state court is not subject to collateral attack in a federal court on the ground that it was motivated by a coerced confession unless the defendant was incompetently advised by his attorney").

The scope of the *Tollett* exception may be seen in *Tollett* itself. The Supreme Court held in *Tollett* that a defendant who had pleaded guilty could not obtain habeas relief "by proving only that" blacks were unconstitutionally excluded from his grand jury. *Tollett*, 411 U.S. at 260. But rather than dismiss the claim, the Supreme Court remanded to allow the lower court to determine in the first instance whether counsel's failure to investigate or object to the grand jury composition constituted ineffective assistance of counsel. *Id.* at 268–70.

Consistent with this interpretation of the *Tollett* exception, many courts, including the Supreme Court, have analyzed on the merits a habeas petitioner's allegation that his counsel rendered pre-plea ineffective assistance by failing to file a motion to suppress. *See Premo v. Moore*, 562 U.S. 115, 123–32 (2011); *Arvelo v. Sec'y, Fla. Dep't of Corr.*, 788 F.3d 1345, 1348–50 (11th Cir. 2015); *Lynch v. Sec'y, Fla. Dep't of Corr.*, 776 F.3d 1209, 1219–20 (11th Cir. 2015); *Gilbert v. Merchant*, 488 F.3d 780, 790–95 (7th Cir. 2007); *Weaver v. Palmateer*, 455 F.3d 958, 972 (9th Cir. 2006); *Ward v. Dretke*, 420 F.3d 479, 487–90 (5th Cir. 2005); *Langford v. Day*, 110 F.3d 1380, 1387 (9th Cir. 1996); *Hale v. Lockhart*, 903 F.2d 545, 550 (8th Cir. 1990); *Adcox v. O'Brien*, 899 F.2d 735, 737 (8th Cir. 1990).

Mahrt's ineffective assistance of counsel claim, premised upon a failure to file a motion to suppress, is squarely within this line of cases. The State's entire case against Mahrt depended on its ability to introduce into evidence the firearms and ammunition found in his room. If the deputies unconstitutionally searched Mahrt's home, counsel's failure to move to suppress the fruits of that search prevented Mahrt from making the informed choice to which he was entitled.

We therefore conclude that Mahrt's ineffective assistance of counsel claim is allowed under *Tollett*.

## B. "Unreasonable Application"

An ineffective assistance of counsel claim entails a two-prong inquiry. "First, the defendant must show that counsel's performance was deficient." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Second, the defendant must show that the deficient performance prejudiced the defense." *Id.* If the defendant has pleaded guilty, "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

We conclude that trial counsel should have moved to suppress the firearms and ammunition. There was at least a chance that such a motion would have succeeded. First, there was a clear conflict in the available evidence. Deputy Yoder's written report tells one story. Mahrt's sworn declaration, supplemented by the sworn declaration of Robyn Ryan, tells another. Both of those declarations were presented to the California courts by Mahrt's habeas counsel. The same evidence — in the form of declarations or live testimony — would undoubtedly have been available to Mahrt's trial counsel had he or she sought to obtain it. According to Mahrt and Robyn Ryan, the deputies were told before they searched Mahrt's room that Tracy Ryan had left the area. The deputies then searched Mahrt's room over his objection. According to Mahrt, there was one extensive search of his room, to which he unambiguously objected, rather than, as recounted by Deputy Yoder, a preliminary

sweep, followed by consent by Mahrt to a further search, followed by an extensive search.

Second, Deputy Yoder's report mischaracterized the first search (if indeed it was a first search rather than a single search) as a "protective sweep." A warrantless protective search is permitted under *Maryland v. Buie*, based on the "interest of the officers in taking steps to assure themselves that the house in which a suspect is being, or has just been, arrested is not harboring other persons who are dangerous and who could unexpectedly launch an attack." 494 U.S. 325, 333 (1990). Mahrt was being detained by the deputies, and they had no reason to suspect that there was some other person who could pose a danger to themselves or to others.

We nonetheless conclude that the state habeas courts were not unreasonable in denying the writ. We have nothing but one-sentence denials from the Court of Appeal and from the Supreme Court, so we are obliged to supply the reasons those courts could have had for their denials. *Richter*, 562 U.S. at 102. It would have been reasonable for the state courts to conclude that a motion to suppress, if brought, would likely have been denied. This is so even if Mahrt's evidence is believed, and even in light of Deputy Yoder's statement that the search was a "protective sweep." We do not regard Yoder's improper use of this legal term, which has a specific and relatively narrow meaning, as preventing the state courts from relying on some other basis to justify the search. Specifically, the state courts could reasonably have concluded that the search was justified under the "emergency aid" exception to the warrant requirement. *See Michigan v. Fisher*, 558 U.S. 45, 47 (2009) (per curiam).

Deputy Yoder stated in his report that "[b]ased on [Mahrt's] behavior, I felt he may be attempting to conceal a victim inside." Although warrantless searches of the home are "presumptively unreasonable," *Kyllo v. United States*, 533 U.S. 27, 40 (2001), law enforcement officers "may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury." *Michigan v. Fisher*, 558 U.S. 45, 47 (2009) (internal quotation marks omitted). To invoke this "emergency aid" exception, an officer must have an objectively reasonable basis for believing both that a person is inside the house and that the person is in need of immediate aid. *See id.*; *United States v. Martinez*, 406 F.3d 1160, 1164 (9th Cir. 2005).

Yoder and the other deputies were not obliged to believe Mahrt and Robyn Ryan when they said that Tracy Ryan had left the area. The officers "were not conducting a trial, but were required to make an on-the-spot decision as to whether [the potential victim] could be in the apartment in need of medical help." *United States v. Black*, 482 F.3d 1035, 1040 (9th Cir. 2007). "[H]ad they not investigated and [the victim] was in fact in the apartment[,]" the officers would likely have been "harshly criticized" by their superiors. *Id.; see also Martinez*, 406 F.3d at 1164 (emphasizing "[t]he volatility of situations involving domestic violence"). It thus would not have been unreasonable for the state courts to regard the possibility of a victim inside Mahrt's room as an exigent circumstance justifying the warrantless search of the room. *See*, *e.g.*, *Mincey v. Arizona*, 437 U.S. 385, 392 (1978).

Conclusion

We therefore reverse the district court's grant of habeas corpus.

**REVERSED.**