**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

NOV 29 2018

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No.   17-10374 |
| Plaintiff-Appellee, | D.C. No. 3:16-cr-00001-RCJ-VPC-1 |
| v. | |
| ALBERTO JULIO GUILLEN, | MEMORANDUM* |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the District of Nevada
Robert Clive Jones, District Judge, Presiding

Argued and Submitted September 7, 2018
San Francisco, California

Before:  BERZON and FRIEDLAND, Circuit Judges, and CARDONE,** District Judge.

Alberto Guillen challenges the district court's denial of his motion to suppress and his sentence following a conditional guilty plea for unlawful possession of a firearm.  Finding no error, we affirm.

---

\*       This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\*       The Honorable Kathleen Cardone, United States District Judge for the Western District of Texas, sitting by designation.

The government charged Guillen with unlawful possession of a firearm under 18 U.S.C. §§ 922(g)(1), 924(a)(2) after law enforcement found a sawed-off shotgun and rifle in his house while responding to an emergency call about a man yelling death threats at 3:40 in the morning. Guillen filed a motion to suppress, arguing that officers had unlawfully entered his home without a warrant or consent, and requested an evidentiary hearing. The district court granted the motion in part and denied in part without an evidentiary hearing or a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978). Guillen then pleaded guilty under a conditional plea agreement that permitted him to appeal the denial of his motion to suppress. The plea agreement also allowed the parties to advocate for or against an offense-level enhancement for possession of a firearm in connection with another felony offense and for any sentence within the Guidelines range. After hearing argument at sentencing, the district court imposed a within-Guidelines sentence of seventy months in custody and three years of supervised release. Guillen appealed.

**1.** Guillen first argues that the district court erred in denying his motion to suppress evidence of the guns inside his home. We review the denial of a motion to suppress de novo. *United States v. Cook*, 808 F.3d 1195, 1199 (9th Cir. 2015).

The district court denied the motion after concluding the emergency aid exception to the warrant requirement applied. Under that exception, "law enforcement officers 'may enter a home without a warrant to render emergency

assistance to an injured occupant or to protect an occupant from imminent injury.'"

*Mahrt v. Beard*, 849 F.3d 1164, 1172 (9th Cir. 2017) (quoting *Michigan v. Fisher*, 558 U.S. 45, 47 (2009)). To determine whether the exception applies, we apply a two-part test that asks whether: "(1) considering the totality of the circumstances, law enforcement had an objectively reasonable basis for concluding that there was an immediate need to protect others or themselves from serious harm; and (2) the search's scope and manner were reasonable to meet the need." *United States v. Snipe*, 515 F.3d 947, 952 (9th Cir. 2008).

The facts of this case satisfy both parts of the emergency aid exception. The officers responded to a 911-caller's report of a man yelling and screaming "at the top of his lungs" and "threatening somebody" at 3:40 a.m. Dispatch informed the officers that the suspect was "threatening someone's life." Law enforcement first encountered Guillen on his front porch and spoke with him to determine what had happened. During their conversation, Guillen corroborated the 911 report through his statements and demeanor. He appeared upset and told the officers he had been "blowing off steam" because he was dealing with a lot of issues. When he refused to say what those issues were, the officers asked whether anybody was inside the house. Guillen responded affirmatively, saying his roommate was inside. Given the substance of the 911 call, the nature of the encounter with Guillen outside of the house, and its corroboration of the 911 call, the officers had an objectively

reasonable basis to conclude somebody inside required their immediate assistance or protection from serious harm. And because the officers first conferred with Guillen before entering the house and confined themselves "to the areas of the house likely to include individuals in harm's way[,]" their entry was "reasonable to meet the need." *See id.* at 952, 954. The district court therefore correctly determined that the emergency aid exception applied.

Moreover, because the emergency aid exception is sufficient to justify the warrantless entry, *see id.* at 954, the district court did not err by denying Guillen's motion without an evidentiary hearing to determine whether he had consented to the entry, *see Cook*, 808 F.3d at 1201 (concluding that the district court did not abuse its discretion by declining to hold an evidentiary hearing in the absence of "a material factual dispute").[1]

**2.** Guillen next contends that the district court wrongly denied a hearing under *Franks* to decide the veracity of the officers' search warrant application. *See*

---

[1] Guillen also argues against the search warrant's validity, maintaining that the warrantless entry "tainted" every fact in the officers' warrant application. This argument is without merit because the emergency aid exception justified the entry. Guillen further contends that evidence of a marijuana pipe and large plastic stick should have been excised from the warrant application because the officers only noticed those items by impermissibly looking into his bedroom. Yet even assuming, without deciding, that this evidence was discovered unlawfully, the warrant application included sufficient evidence from the valid entry, such as the roommate's statements and injury, to establish probable cause. *See United States v. Job*, 871 F.3d 852, 865 (9th Cir. 2017).

438 U.S. 154. In making this argument, Guillen relies upon one acknowledged misstatement in the application, about where his roommate was when law enforcement arrived, and one alleged omission, that the officers' initial entry into the house was unlawful. Because the emergency aid exception allowed the warrantless entry, however, Guillen's argument that officers concealed that entry to obtain the search warrant necessarily fails. So we need only consider whether the misstatement about the roommate's location entitled Guillen to a *Franks* hearing.

A *Franks* hearing is appropriate only if the moving party can make a "substantial preliminary showing that [1] a false statement was deliberately or recklessly included in or omitted from a warrant affidavit, and [2] that the false statements or omissions were material to the finding of probable cause." *United States v. Meek*, 366 F.3d 705, 716 (9th Cir. 2004) (citing *United States v. Fisher*, 137 F.3d 1158, 1164 (9th Cir. 1998)). A false statement is "material" if "necessary to finding probable cause." *United States v. Perkins*, 850 F.3d 1109, 1116 (9th Cir. 2017) (citation omitted).

Guillen has not demonstrated the materiality of the misstatement that law enforcement arrived finding the roommate "out in the front yard." This misstatement is immaterial because it was not "necessary to finding probable cause." *See id.* Instead, probable cause was established by the 911 call, Guillen's

corroboration of the substance of that call, the roommate's statements about his altercation with Guillen, including that Guillen had displayed a sawed-off shotgun and hit him with a large plastic stick, as well as the roommate's resulting visible injury. *See United States v. Job*, 871 F.3d 852, 865 (9th Cir. 2017). Accordingly, the district court did not err by denying Guillen's *Franks* request.

**3.** Guillen next argues that the government breached the plea agreement at sentencing. We generally review a claim for breach of plea agreement de novo. *United States v. Mondragon*, 228 F.3d 978, 980 (9th Cir. 2000). However, when defense counsel fails to object to the prosecutor's statements at sentencing, as in this case, we are limited to plain error review. *United States v. Whitney*, 673 F.3d 965, 970 (9th Cir. 2012). "Relief for plain error is available if there has been (1) error; (2) that was plain; (3) that affected substantial rights; and (4) that seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *Id*.

Here, there was no plain error because the government did not breach the plea agreement. Guillen argues the government breached the agreement during his sentencing hearing by informing the district court that it was not bound to consider only the facts in the plea agreement, reading the offense facts included in the presentence investigation report, and "implicitly arguing" for a sentence above the Guidelines range by detailing Guillen's criminal history. We disagree. The

government's arguments and statements at sentencing fully comported with the plea agreement, which explicitly allowed either party to "provide additional information" to the district court "regarding the nature, scope, and extent of the defendant's criminal conduct and any aggravating or mitigating facts or circumstances."

**AFFIRMED.**

*United States v. Guillen*, No. 17-10374

BERZON, Circuit Judge, concurring in part and dissenting in part:

I concur in the majority's determination that the government did not breach the plea agreement. I respectfully dissent, however, with regard to the motion to suppress. In my view, the emergency aid exception to the warrant requirement does not apply on the facts of this case. The evidence discovered after the police entered Alberto Guillen's apartment should have been suppressed.

**1.** When the officers entered Guillen's house, it was not objectively reasonable to believe that the officers needed to "enter [Guillen's] home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury." *Bonivert v. City of Clarkston*, 883 F.3d 865, 876 (9th Cir. 2018) (quoting *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006)). The officers certainly did not need to enter the home to protect Guillen's roommate from imminent harm by Guillen. When the officers entered the home, Guillen was outside the house, next to two officers. *See id.* at 877. There is no evidence he was at this point armed, hostile, or otherwise presented a risk of imminent harm.

Nor was there an objectively reasonable basis to believe that the officers needed to "render emergency assistance to an injured occupant" inside the house. *Id.* The officers arrived at Guillen's home after dispatch reported that a man who was screaming had threatened somebody's life. But there was no report that

anyone had been physically attacked, much less injured. And when the officers arrived, there were no signs that indicated that somebody in or near Guillen's house had been recently injured. *See Bonivert*, 883 F.3d at 877 (noting that the house was silent while the officers were outside); *cf. Michigan v. Fisher*, 558 U.S. 45, 48 (2009) ("Just as in *Brigham City*, when [the police] arrived on the scene they encountered a tumultuous situation in the house—and here they also found signs of a recent injury, perhaps from a car accident, outside."); *United States v. Martinez*, 406 F.3d 1160, 1165 (9th Cir. 2005).

The need to enter a house to provide emergency aid must be viewed under the totality of the circumstances. *See Bonivert*, 883 F.3d at 877 (requiring "an objectively reasonable basis for believing that an actual or imminent injury was unfolding in the place to be entered"). Here, taking into account the totality of the circumstances, the officers had no basis to reasonably believe that Guillen's roommate was in need of immediate assistance.

**2.** Even if the officers had some basis for concern about Guillen's roommate, they took no steps to ascertain whether the roommate needed emergency assistance before going into Guillen's house. "[I]f police officers otherwise lack reasonable grounds to believe there is an emergency, they must take additional steps to determine whether there is an emergency that justifies entry in the first place." *Hopkins v. Bonvicino*, 573 F.3d 752, 765 (9th Cir. 2009) (internal quotation marks

and alterations omitted).  On the limited record available, it appears that the officers simply demanded that Guillen let them into the house, making no effort to contact the roommate before doing so.[1]

The government suggests that if the officers had not entered the house as they did, their only option would have been to walk away.  But the officers did not have such a limited option.  They could have knocked on the front door, rang the doorbell, attempted to contact Guillen's roommate through a window, or, perhaps, called Guillen's roommate on his cellphone.  *Cf. Michigan v. Fisher*, 558 U.S. 45, 46 (2009) (noting that the officers first knocked before entering the suspect's home); *Brigham City,* 547 U.S. at 406 (noting that the officers "opened screen door and 'yelled in police'" before entering the home); *Bonivert*, 883 F.3d at 877 (noting that the officers "peered into different windows" before entering the suspect's home); *United States v. Snipe*, 515 F.3d 947, 954 (9th Cir. 2008) ("Much like the officers in *Brigham City*, Massey and Rodriguez knocked and announced their presence before entering the residence."); *Martin v. City of Oceanside,* 360 F.3d 1078, 1080 (9th Cir. 2004) (noting that the officers called the occupant's phone and repeatedly knocked on the front door before entering the home); *United States v. Dugger*, 603 F.2d 97, 98 (9th Cir. 1979) (noting that after the officers

---

[1] The limited record here is the government's own doing.  In the district court proceedings, the government opposed the defendant's request for an evidentiary hearing on the motion to suppress.

opened the door to apartment and called out to occupant, the occupant told the officers that "he was putting on his shoes and would be right out").

Thus, even accepting that there was some basis for fearing aid needed to be administered, the government has not met its burden of showing that the entry into Guillen's house was reasonable under the emergency aid exception.

Because the government has not shown that an exception to the warrant requirement applies, and the fruits of the unlawful search should be suppressed, I respectfully dissent.